*48 Vroom.* Newcomb v. Kloeblen.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, J.J.   16.

WILLIS O. NEWCOMB ET AL., PARTNERS, TRADING AS S. JUDD & COMPANY, DEFENDANTS IN ERROR. v. ALBERT KLOEBLEN, PLAINTIFF IN ERROR.

Submitted March 23, 1909—Decided November 15, 1909.

1. The plaintiffs were commission merchants; they refused to make any further sales to the defendant's son unless his account was guaranteed by defendant. Defendant wrote to the plaintiff's, "I will be responsible for any bill that my son James will make." *Held*, that use of the word "any" did not limit the guarantee to the one bill of goods delivered when the guarantee was given, but that it was a continuing guarantee.

2. In an action on a guarantee where the issue is whether the guarantee is a continuing one, conversations between the guarantor and his son at the time of executing the guarantee are inadmissible for the purpose of showing the meaning of the guarantee.

3. In construing a contract of guarantee whatever may be the limitations as to time or amount, the rule of construction is to take the words of the contract together with the surrounding facts as the exponent of the meaning of the parties.

On error to the Hudson Circuit Court.

For the plaintiff in error, *John J. Fallon.*

For the defendants in error, *Clarence Linn.*

The opinion of the court was delivered by

VROOM, J.   This action was brought by S. Judd & Company against the defendant below, Albert Kloeblen, as guar-

antor for goods sold to his son, James Kloeblen. It appeared from the evidence at the trial that the plaintiffs below were live stock commission merchants. James Kloeblen was one of their customers. In the month of April, 1906, the plaintiffs refused to make any further sales to him unless they had a guarantee of his account from his father, the defendant in this suit. Such a guarantee was procured from the defendant, and a copy of the same is as follows:

"JERSEY CITY, N. J., April 20th, 1906.
"*S. Judd & Co.:*
"DEAR SIRS—I will be responsible for any bill that my son James will make, thank you for the same. I remain,
"Yours truly,
"ALBERT KLOEBLEN."

On the strength of this guarantee the plaintiffs thereafter sold to James live stock, from time to time, as he required it, until July, 1907, when he failed in business, owing them $2,251.92.

The case was tried at the Hudson Circuit before Judge Speer, without a jury, and he found for the plaintiffs, and directed a judgment for the plaintiffs for the amount claimed, with interest.

The first contention made by the plaintiff in error in favor of the reversal of the judgment below was that the trial court erroneously held that the paper-writing was a continuing guarantee. On motion to nonsuit, made by the defendant below, the trial judge held that the "phraseology that he will guarantee any bill will include any bill the son might contract, whether in one purchase or more." The insistment is now made that the language of the paper itself, and the circumstances under which it was given, show that the liability of the defendant was intended to be limited to the bill of goods for which James Kloeblen had applied to the plaintiffs to purchase, and that it could not be operative in guaranteeing the payment of all bills sold to him after the delivery of the guarantee.

In coming to the consideration of the question as to whether this is or is not a continuing guarantee, it is important to refer to the general rule for the construction of guarantees. Admittedly, in the construction of contracts, it is a general rule that all words are to be taken most strictly against the grantor or contractor. *De Coly. Guar.* 177. And although in some jurisdictions it has been laid down that the contract of guarantee must in this respect be construed differently from other contracts, following Baron Bayley in *Nicholson* v. *Paget,* 1 *C. & M.* 68, yet in this state the doctrine must be considered as settled as stated by Chief Justice Beasley, in *Hoey* v. *Jarman,* 10 *Vroom* 523; *affirmed,* 11 *Id.* 379, that "the words of a guarantee will be read most strongly against the guarantor," the learned Chief Justice citing with approval the language of *Burge on Suretyship, p.* 46, "it may then be considered that the contract of guarantee or surety will be subject, as every other contract, to the rule that where there is ambiguity or obscurity, which the other parts of the instrument do not explain, it is to be construed *potius contra proferentum*—that is, against the party giving the instrument."

Is, then, the guarantee here in question a continuing one or not? In considering the law applicable to the matter of continuing guarantees, De Colyar, in his *Law of Guarantees,* says: "No fixed rules have been laid down for determining whether a guarantee is to be considered a continuing one or not, and that such guarantees are to be so construed as to give effect to what may be fairly inferred to be the real intention and understanding of the parties as expressed in the writing." To the same effect, *Brandt on Suretyship and Guarantees,* § 130: "The true rule for construing guarantees is to give effect to the intention of the parties as expressed in the instrument read in the light of the surrounding circumstances."

It was held in the case of *Wood* v. *Priestner, L. R. Exch.* 66, by Chief Baron Kelly, in deciding the guarantee there sued upon, to be a continuing one, that "the question in these cases depends not merely on the words, but when the words are at all ambiguous, requires a consideration of the circumstances to aid the construction. It is, therefore, necessary to look at

the existing state of things, and, looking at that, to construe the words in such a way as we consider most consistent with the situation of the parties, not indeed any statement of either party as to what he meant by the words used, but taking the words themselves, together with the surrounding facts, as the exponent of the meaning of both."

The guarantee in this case, it will be noticed, contains no limitation either as to time or amount. It reads: "I will be responsible for any bill that my son James will make." The contention that the use of the word "any" limited the guarantee to the one bill of goods purchased at the time of the delivery of the guarantee is without merit. Many cases could be cited showing that in similar actions upon guarantees the word "any" has been construed as synonymous with "every;" thus in *Mason* v. *Pritchard,* 12 *East* 227, where the words of the guarantee were "to be responsible for any goods he hath or may supply to my brother to the amount of one hundred pounds." And in *Merle* v. *Wells,* 2 *Campb.* 413, where the guaranty was "I consider myself bound to you for any debt he, my brother, may contract for his business as a jeweler, not exceeding one hundred pounds, after this date." In both cases the guarantees were held to be continuing. In 14 *Am. & Eng. Encycl. L.* (2d ed.) 1139, a distinction is sought to be made between guarantees containing a limitation as to the amount for which the guarantor will be bound, but containing no limitation as to time, and guarantees containing no limitation either as to time or amount. In the former, where there is nothing in the circumstances surrounding the execution of the contract to evince a contrary intention, it will in general be construed a continuing guaranty, and in the latter, where there is nothing in the instrument itself from which it can be inferred that it is the guarantor's intention to have it open as to both, the guarantee will be understood as referring to a single transaction.

Whatever merit there may be in drawing the distinction so made, it is unnecessary here to consider. I find no adjudged case making such a distinction, but, after all, we must come to the conclusion of Chief Baron Kelly in the cases above

cited, that the true construction can only be reached, whatever be the limitation as to time or amount, by taking "the words themselves, together with the surrounding facts, as the exponent of the meaning of both parties."

The instrument in this case, when considered in the light of the surrounding facts and circumstances, clearly evinces the intention to create a continuing guarantee.

The trial judge made a general finding for the plaintiff. Concededly this finding must be construed as including every fact favorable to the plaintiff that might reasonably be found from the evidence. The fact of the previous dealing between James Kloeblen and the plaintiffs there appeared, and the absolute necessity on his part for a general credit for the future, as the plaintiff refused to make him further sales unless his father, the defendant, would guarantee his account with them. Under these circumstances the defendant guaranteed to be responsible for "any bill that my son James will make," and this leads inevitably to the conclusion that the guarantee was to remain continuing until revoked.

The next contention on the part of the plaintiff in error was that the trial judge erred in refusing to permit the defendant to show the circumstances under which the guarantee was given. The offer was of evidence of the conversation between James Kloeblen and his father, the defendant, prior to the execution of the guarantee. The refusal of the trial judge was based upon the theory that the offer of the defendant was to show the meaning Albert Kloeblen intended to express in the writing and the conversation between James and his father at the time of its execution. The ruling of the trial court in overruling the questions was correct. *Naumberg* v. *Young,* 15 *Vroom* 331; *Grueber Engineering Co.* v. *Waldron,* 42 *Id.* 598.

It was further urged on the part of the plaintiff in error that the defendant was not bound by the guarantee until after notice to him by the plaintiffs that they accepted it and intended to act upon it. No exception appeared in the record covering this ground, nor was the question raised at the trial.

The objection that the plaintiffs cannot recover upon defendant's guarantee, because they did not notify him of the

default of James in paying his bills, is without substance. *Columbia Electrical Supply Co.* v. *Kemmet,* 38 *Vroom* 19.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.    15.

*For reversal*—None.