[Civ. No. 9235. Second Appellate District, Division Two.—April 18, 1934.]

A. W. BURRILL, as Trustee in Bankruptcy, Respondent, v. ROBERT MARSH & CO., INC. (a Corporation), Appellants.

Harmel L. Pratt for Appellants.

West & Andrews, Reuben G. Hunt and Fred N. Arnoldy for Respondent.

HAHN, J., *pro tem.* — Two cases involving the same questions are before us on appeal, one brought by A. W. Burrill, as trustee in bankruptcy of the Estate of United Finance Company, a corporation, and the other by Herman C. Smith [*Smith* v. *Robert Marsh & Co.*, (Mem.) (31 Pac. (2d) 826)]. Robert Marsh & Company, Inc., and Robert Marsh were named defendants in each action. In the Smith case A. W. Burrill, as trustee in bankruptcy, appeared as intervener.

In the discussion that follows reference will be made to the one case wherein Burrill, as trustee, is plaintiff.

The controversy arises over a contract of guaranty made a part of each of twenty-five promissory notes executed by the Utah Land & Cattle Company, which guaranty, signed by Robert Marsh & Company and Robert Marsh, reads as follows: "For value received, we severally guarantee the payment of the within note at maturity, or any time thereafter, and hereby waive presentment, protest, demand and notice of demand, and nonpayment, and suit, against the maker, and consent that the payment of this note may be extended from time to time without affecting our liability,

and hereby waive diligence on the part of any holder hereof in collecting the said note and any defense arising out of lack of diligence in enforcing the collection thereof.'' The notes in question were each dated April 1, 1925, for the principal sum of $3,200, with semi-annual interest coupons attached, and by their terms were payable April 1, 1930.

From judgments in favor of plaintiff Burrill, as trustee in bankruptcy, in one action, and in his favor as plaintiff in intervention in the other, defendants have appealed.

It appears from the record that for some weeks prior to July 6, 1925, one J. H. Scales was engaged in promoting the Blodgett Finance Company, which corporation, when organized, was to acquire the business of several going concerns engaged in financing automobile loans and issuing automobile insurance. During this period Scales had several conferences with Robert Marsh concerning these promotion plans and a proposal that Marsh acquire a block of stock of the Blodgett Finance Company. Marsh, who through his company owned 48 mortgage notes of the Utah Land & Cattle Company, each for the principal sum of $3,200, finally agreed on or about July 6, 1925, that he and his company would exchange the notes in question, guaranteed by them, for 1286 shares of the capital stock of the Blodgett Finance Company and the promissory notes of the Blodgett Finance Company for the principal sum of $25,000. The 25 notes here involved, being a portion of the 48 notes transferred by defendants to the Blodgett Finance Company, passed into the possession of the United Finance Company some time prior to November 4, 1927, on which date the United Finance Company was adjudged a bankrupt and A. W. Burrill appointed trustee of the bankrupt estate. Having come into possession of these notes as such trustee, and the interest coupons due and payable on October 1, 1927, and April 1, 1928, not having been paid, on July 17, 1928, plaintiff filed suit against defendants on their contracts of guaranty to enforce payment of the principal and accrued interest on the notes.

Plaintiff presented his *prima facie* case by the introduction of the notes and the guaranty contract written on the back of each note, and with the stipulation by counsel for defendants that no part of the principal of any note, and

no part of the interest falling due after April 1, 1927, had been paid, rested his case.

Thereupon defendants moved for a nonsuit on the following grounds: "1. That the evidence of the plaintiffs was insufficient to constitute a cause of action against defendants or either of them. 2. That the action was filed prematurely in that the defendants 'guaranteed payment of the within note at maturity or any time thereafter', and that 'at maturity' meant the first day of April, 1930, regardless of the acceleration of payment provided for in the note. 3. That the plaintiffs by failing to file their action for more than a year after default in the payment of interest, waived the right to accelerate the maturity of the notes for nonpayment of interest; thus the notes had not matured when the action was filed." Upon denials of their motion for nonsuit defendants offered evidence in support of their defense. Upon submission of the case, judgment and findings were ordered for plaintiff.

Appellants in their brief urge as errors committed by the court:

First: Denial of their motion for nonsuit.

Second: Insufficiency of the evidence to support the findings or judgment.

■ Under their first point appellants contend that the action was prematurely brought because:

(a) There was no default in the payment of any interest on the notes that would give the holder the legal right to accelerate the due date of the principal; and

(b) The defendants were not liable on their guaranty until after April 1, 1930; this on the theory that the term "maturity" as used in the contract of guaranty means the due date specified in the note.

The complaint in the action contains the following allegation: "That interest was waived from June 17, 1927, to June 17, 1928." This waiver it is claimed by appellants includes all interest represented by the coupons falling due between those dates. The language of the waiver does not justify this construction. The period for which interest was waived is very definitely fixed. It does not include the interest from April 1 to June 1, 1927, which became due and payable on October 1, 1927.

■ The second point urged in support of the contention that the action was prematurely brought depends upon the meaning of the word "maturity", as used in the contract of guaranty. If its meaning is limited to the due date specified in the note, as urged by appellants, then their point is well taken. If, on the other hand, it means any date after which, according to the terms of the note, the holder had the legal right to sue upon the note, then the suit was not prematurely brought.

The notes in question contain the following clause: "If default be made in the payment of any interest coupons or any portion thereof, for the space of thirty days, the principal sum and all unpaid interest shall, any time thereafter, at the option of the holder of this note, become immediately due and collectable without further notice." Counsel in their briefs cite no case where the term "maturity" has been construed in its application to circumstances such as are here involved.

Bouvier's Law Dictionary defines the word "maturity" as "the time when a bill or note becomes due", and Webster's International Dictionary as "a becoming due; termination of the period a note or other obligation has to run". In the case of *Ardmore State Bank* v. *Lee*, 61 Okl. 169 [159 Pac. 903], it was held that "maturity when applied to commercial paper means the time when the paper becomes due and demandable; that is the time when an action can be maintained thereon to enforce payment".

In the case of *San Francisco Theological Seminary* v. *Monterey County Gas & Elec. Co.*, 179 Cal. 166 [175 Pac. 693], the court had under consideration a contract of guaranty which read as follows: "For value received, Monterey County Gas and Electric Company, a corporation, agrees, to and with the holder of this bond and the attached coupons, that if the several sums of money agreed to be paid hereby are not paid in the manner therein stated, as they severally· become due, then and in that event the Monterey County Gas and Electric Company will pay the same." The defendant there, as here, contended that the action against it as a guarantor of the bonds was prematurely brought, because under the terms of the contract of guaranty it was not liable until after the expiration of the due date specified in the bond. The court in refusing

to accept defendant's interpretation of the contract makes this observation: "The bond not only promises to pay the principal on July, 1, 1937, but it makes express reference to the mortgage in such manner as to incorporate the provision of that instrument for accelerating the maturity of the principal upon default in the payment of interest. . . . In effect the bond does not merely bind its maker to pay the principal upon the first day of July, 1937. By referring to the provisions of the mortgage it qualifies the promise to pay and declares that in certain contingencies the principal may become due at an earlier date. When then the guarantor bound itself to pay the several sums of money agreed to be paid by the bond if they were not 'paid in the manner therein stated as they severally became due', it made itself liable for the payment of the principal of the bonds whenever such principal should become due, whether on the first day of July, 1937, or at such earlier time as might be fixed under the mortgage provisions incorporated in the bond."

The considerations stated and conclusions arrived at in the case above quoted from would seem applicable to the situation here involved. Counsel for appellants point out the comment of the writer of that opinion where he says, "if the agreement of the appellant went no further than to guarantee that the principal of the bonds should be paid on July 1, 1937, it could not be called upon to pay this amount at any time prior to such due date", as supporting their contention that the term "maturity", as used in the contract of guaranty herein involved, may only be construed to mean April 1, 1930, the due date specified in the note. We do not believe the quoted comment justifies this conclusion. The term "maturity", as here used, when read with the acceleration provisions of the notes and the considerations that may be fairly said to have entered into the making of the contract, would seem to justify a broader interpretation than that urged by appellants. Conceding, as we must, that persuasive argument may be advanced in support of each of the views presented, we are of the opinion that the term "maturity", as here used, should be construed to mean the date when the holder of the notes had a legal right to begin action to force payment thereof.

Appellants next urge that respondent waived his right to accelerate the due date of the notes because of his

delay in bringing suit. Respondent has two answers to this proposition, both of which have merit. First, that the issue of waiver can only be raised by pleading it in their answer; and inasmuch as no such plea was made it is not now available to appellants. (*Weinke* v. *Smith,* 179 Cal. 220 [176 Pac. 42]; *Hewitt* v. *Dean,* 91 Cal. 5 [27 Pac. 423]; *Patten* v. *Pepper Hotel Co.,* 153 Cal. 469 [96 Pac. 296].) ▮ Second, that in the acceleration clause in the notes here involved the holder is given the right at "any time thereafter", after a period of thirty days after default, to declare the principal due, while in the cases cited by appellants, particularly the case of *Crossman* v. *Page,* 73 Cal. 213 [14 Pac. 787, 2 Am. St. Rep. 789], the right to declare the note due is "immediately" upon the default. The clause "any time thereafter" gives to the holder the widest possible latitude in time within which to act, while the word "immediately" denotes the most restricted period within which he must act.

▮ In connection with appellants' third and last point, insufficiency of the evidence, appellants urge, first, that the court erred in denying their motion for a nonsuit, for the reason that the evidence presented by the plaintiff in his case in chief failed to support the necessary and material allegations of the complaint, and secondly, that the evidence shows such "palpable fraud" practiced on the defendants as an inducement to their transfer of the Utah Land and Cattle Company notes to the Blodgett Finance Company, that the findings declaring against such alleged fraud and the judgment rendered thereon are not supported by the evidence. We find no merit in either of these contentions.

As to the first, a *prima facie* case was made out by the plaintiff upon the introduction of the notes and the stipulations as to nonpayment. As to the second, the evidence on the question of fraud was in marked conflict, and therefore this court may not set aside the trial court's findings of fact on that issue.

As the record discloses no error, the judgment must be affirmed. It is so ordered.

Stephens, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1934.