SAMUEL COOLING and SECURITY TRUST COMPANY, surviving executors of the Last Will and Testament of Severson B. Cooling, et al., v. HAROLD L. SPRINGER and WILLARD SPRINGER, JR., executors of the Last Will and Testament of Willard Springer, Deceased.

230

(*February* 12, 1943.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Hering, Morris, James and Hitchens* and *Henry W. Bryan* for the plaintiffs.

*Logan and Duffy* and *H. Newton White* for the defendants.

Superior Court for New Castle County, No. 19, September Term, 1941.

RODNEY, J., delivering the opinion of the Court:

The first step in ascertaining the liability of a guarantor is to determine the nature and meaning of the contract under which such liability is asserted. In the present case the first question to be determined is, we think, whether the guaranty, admittedly present, be limited or continuing in character, or if these terms are not apt and appropriate, then to determine the time that such guaranty was by agreement of the parties to remain and exist.

Courts have differed as to whether, on the one hand, the contract should be strictly construed in favor of the guarantor, because the liability of the guarantor ought not to be unduly increased beyond the precise terms of his engagement, and, on the other, so as to be strictly construed against the guarantor because the language used represents the language selected by the guarantor, and that the guaranty will only be limited as the guarantor has expressly seen fit so to do.

See cases collected in *National Exchange Bank v. Gay,* 57 Conn. 224, 17 A. 555, 4 L. R. A. 343; *Newcomb v. Kloeblen,* 77 N. J. L. 791, 74 A. 511, 39 L. R. A. (N. S.) 726; *First Nat. Bank v. Waddell,* 74 Ark. 241, 85 S. W. 417, 4 Ann. Cas. 822; Ann. Cas. 1918E, 616.

The true rule, when applicable, is that a guaranty contract, like all other contracts, should be determined by the basic consideration that the intent of the parties must prevail. Where this intent is reasonably clear, there is no room for construction.

A limited guaranty is ordinarily one restricted in its application to a single transaction. The defendants assert that such is the guaranty here considered.

A continuing guaranty, as generally defined, is one which is not limited to a single transaction, but which

contemplates a future course of dealing, covering a series of transactions, and generally for an indefinite time. The plaintiffs assert that such is the nature of the present contract.

A well defined branch of continuing guaranty is found where the guaranty contains a limitation as to the amount for which the guarantor will be bound, but is without any limitation as to the time of performance of the guaranty. 14 A & E, 2d Ed., 1140; 28 C. J. 960; *Interstate Trust & Banking Co. v. Sabatier,* 189 La. 199, 179 So. 80; *Commercial National Bank v. Richardson,* 163 La. 933, 113 So. 152.

Because both parties assert that the present instrument of guaranty plainly shows the intent of the parties, so the instrument, as it appears in the statement of fact, must be critically examined. It is quite apparent that the instrument rather plainly expresses an agreement as to, at least, seven particulars to which we have placed arbitrary numbers.

1. The guarantors guarantee the payment of the particular note at maturity.

2. If the note be extended or renewed they guarantee the payment of such extensions or renewals at the time when such renewals shall become due and payable.

3. They waive notice of the purchase and discount of the note.

4. They waive notice of the acceptance of the guaranty.

5. They waive notice of any extensions or renewals of the note.

6. They waive notice of demand on the maker and refusal or [of] payment thereof.

7. They guarantee and make themselves responsible

for the payment of the note, and any and all renewals or extensions thereof.

The defendants contend that the language concerning extensions and renewals was included "solely to avoid the operation of the familiar rule that a guarantor is discharged if there is an extension or renewal without his consent." The cited rule is applicable to various situations and, as applied to an indorser, is as old in this State as *McDowell v. President, etc., of Bank of Wilmington & Brandywine*, 1 *Harr.* (1 *Del.*) 369. The rule, however, would seem either to presuppose a limited guaranty, or that the extensions or renewals would exceed in amount or time the stipulations of a continuing guaranty. In 9 Br. Rul. Cas. 979, it is stated:

"It appears well settled that a continuing guaranty or surety is not discharged by the execution of renewal notes without his consent where such renewal notes are within the amount guaranteed and are not made payable beyond the time contemplated by the contract of the guarantor or surety."

Just as any indorser may, in advance, waive any defense arising, under the rule, from a renewal or extension, so can a guarantor. This the guarantors in the present case have done by guaranty No. 5, as above set out, and by this guaranty the rule, suggested by the defendants, has been fully met. If the purpose of the inclusion of reference to renewals or extensions is fully met by the language of guaranty No. 5, there still remain other guaranties which must be considered. Not only by guaranty No. 5 have the guarantors expressly waived notice of renewals, but by Guaranties Nos. 2 and 7 they have expressly guaranteed the payment of each and every renewal at the times that they shall severally become due and payable.

We appreciate the fact that much of the difficulty

in the present case would seem to arise from the apparent necessity of using phraseology to which most Courts have accorded a constricted meaning. So the words "continuing guaranty" with most Courts and writers have been given a meaning referring solely to a number of credits or transactions which are the subject of the guaranty, and the term "limited guaranty" is adopted when but a single transaction is involved. To us it seems that a "continuing guaranty," if it means a guaranty that is to continue beyond the normal existence of the single transaction, may, if the parties plainly so indicate, refer to the continuing period of the guaranty, even though such continuing period has original reference to a single promissory note. Upon principle there would seem to be no difference between a guaranty "of all sums advanced to E. M. Records & Co., up to the amount of $30,000, and to be evidenced by promissory notes therefor or renewals thereof" and a guaranty of one promissory note for $30,000, "and any and all renewals thereof expressly guaranteeing the payment of each renewal."

The first would contemplate a number of notes or transactions, and would generally be termed a continuing guaranty; the second would contemplate but one original transaction kept alive and continued by agreed renewals, each of which was expressly guaranteed. In both the maximum amount of $30,000 is the thing guaranteed, and the continuing nature of the guaranty until this debt or amount be paid is the express agreement of the parties.

To us it is plainly apparent that the guarantors intended to expressly confine their guaranty to the single transaction of the E. M. Records note for $30,000, originally dated January 17, 1928, and to that extent the guaranty was limited. It is equally apparent that they anticipated that the note might be renewed, and expressly guaranteed the payment of each renewal at the time such renewals would become due and payable. To that extent the guaranty was

a continuing guaranty so long as the renewals continued and the guaranty remained unrevoked. The renewals were regularly made, and there was no time when any renewal was in default as a matter of time, and the guaranty was never revoked.

There is some conflict among the authorities as to whether an anticipatory assent to the extension of time of payment permits of one extension only, or more than one. See 8 Am. Jur. 456, and cases collected in 94 A. L. R. 1449; 117 A. L. R. 970. This conflict is largely because of the varying language of the instruments. Language could scarcely be plainer than that employed in the present guaranty. It was that the guarantors made themselves responsible for "any and all" renewals or extensions of the note. This we think makes the anticipatory assent apply to all such renewals as are properly had.

There is also some conflict as to the effect of the giving of a renewal note, viz., as to whether such renewal operates as a discharge of the former note, or whether such renewal operates merely as an extension of the time of payment. All authorities seem to agree that this is a matter of intent of the parties. See cases collected in *First Nat. Bank v. Yowell,* 155 Tenn. 430, 294 S. W. 1101, 52 A. L. R. 1416; *State Bank v. Mutual Tel. Co.,* 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1084. In the present case this question does not assume great importance. If the renewal notes were in discharge of the prior notes, and thus became the primary obligations, then the guarantors have waived notice of the giving of said renewals, and have expressly recognized such renewals and specifically guaranteed their payment; if the renewal notes operated only as an extension of the time of payment, then their effect was merely to re-establish the particular contract for another period of time, and postponed the maturity of the note until the expiration of the time covered by the renewal.

The principal argument of the defendants is based upon the supposition that because the guarantors guaranteed the payment of the note dated January 17, 1928, at its maturity, that such obligation was to pay the note at all events on April 17, 1928, its original maturity date, and that the bank could have required payment on April 18, 1928, or at any time subsequent thereto, and that therefore the Statute of Limitations began to run in favor of the guarantors on April 18, 1928.

We doubt that such supposition is justified. Payment of the note at maturity was, of course, one of the guaranties of the defendants. Maturity means the time when the note became due and demandable, or the time when an action could be maintained thereon to enforce payment. *Ardmore State Bank v. Lee,* 61 Okl. 169, 159 P. 903, 905. See, also, *Gilbert v. Sprague,* 88 Ill. App. 508.

In the present case before the original note became due and demandable, the bank, with the express antecedent consent of the guarantors, had extended its maturity and such was the effect of each renewal. Every renewal having been regularly made, and no note having reached maturity without renewal, no amount was due and demandable until after the last renewal was payable on July 20, 1937. In *Burrill v. Robert Marsh & Co.,* 138 Cal. App. 101, 31 P. 2d 823, the reverse of the present matter was considered. There under a guaranty of payment of notes "at maturity" suit on the guaranty was held not premature when brought after payment of the notes had been regularly accelerated.

Renewal of a bill or note, or extension of the time of payment postpones, between the parties, the right of action and the commencement of the running of the limitation until the expiration of the period for which the extension is granted.

The defendants, however, contend that regardless of the effect of the extension as against the maker of the note, yet the guaranty is to be considered as single and limited in character, and as subject to a limitation of time beginning at the original maturity of the original note.

In 2 *Wood on Limitations*, 4th Ed., § 146, it is said:

"Where the guaranty is absolute the liability of the guarantor to suit arises and is fixed at the same moment that an action accrues against the principal debtor or, if a later period is, in terms, fixed upon, then upon the arrival of the time named therein."

In *Darby & Bosanquet on Statute of Limitations*, § 33, it is said that

"As between creditor and surety the Statute of Limitations runs in favor of the surety as soon as he becomes liable to make a payment to the creditor."

And in *Pingrey on Suretyship*, § 371, it is said:

"The Statute of Limitations begins to run in favor of a guarantor from the time he is liable to suit * * *."

See also *Stearne on the Law of Suretyship*, p. 228.

It would seem to us that in the present case the written guaranty in the most express terms has not only authorized extensions or renewals, but has expressly guaranteed the payment of such extensions or renewals "at the time when they shall become due and payable." These provisions are as binding on the guarantors as the guaranty of the original debt or note itself. It is difficult to imagine how the guarantors could have selected more apt or appropriate language which would more effectually cover the facts of the present case.

The defendants have cited certain authorities as bearing out their contention, and these cases must be briefly con-

sidered. *Conway Sav. Bank v. Dow,* 69 N. H. 228, ·39 A. 975; *Newell v. Clark,* 73 N. H. 289, 61 A. 555; *Bash v. Bash,* 123 Neb. 865, 244 N. W. 788; *Mutual Life Ins. Co. v. United States Hotel Co.,* 82 Misc. 632, 144 N. Y. S. 476; *Baird v. Foss Inv. Co.,* 58 N. D. 345, 226 N. W. 523.

*Conway Sav. Bank v. Dow* is clearly distinguishable. There the guaranty was for one single demand note with no provision as to renewals, and no guaranty of such renewals. *Newell v. Clark* is equally without application. A demand note was there involved, and it was held that liability of the guarantor ceased after the Statute of Limitations had barred action against the debtor. In neither of the above cases were renewal notes involved, nor any waiver of notice of renewals or extensions.

In *Bash v. Bash* there was no waiver of renewal, and the first renewal was not had until six months after the original note had matured, and a later renewal was after an interval of two years.

In *Mutual Life Ins. Co. v. United States Hotel Co., supra,* the bond of indemnity had covered extensions and renewals. The original and guaranteed obligation had been due September 1, 1880. No renewal or extension was entered until November 23, 1908, and suit was brought in 1912. It was held that since no renewal had happened for 28 years, and after Statute of Limitations had run, that there was no liability on the guaranty.

The remaining case of *Baird v. Foss Inv. Co.,* 58 N. D. 345, 226 N. W. 523, cannot be so readily distinguished, and the substance of its holding must be more critically examined. There the guarantor, on March 16, 1918, guaranteed "the payment of the within note at maturity or at any time thereafter or any renewal of the same * * * and consent that the time of the payment of this note may be extended from time to time without affecting my liability thereon."

Suit was brought in November, 1926, and renewals were shown down to a period within the Statute of Limitations. The Court held that "the promise to guarantee a renewal of the same obligation is meant to define the liability with respect to that obligation rather than to create an added or new liability in the future. The guarantor agrees to be held liable for the particular debt whether evidenced by the original note or by a renewal. Regardless of the number of times the debt is renewed, the cause of action is essentially single and is upon the original guaranty, and it must be brought within the period of limitation prescribed for such a cause."

The Court in the cited case strongly relied upon the Mutual Life Ins. Co. case in 144 N. Y. S. 476, but that case we think is clearly distinguishable. It is difficult to fully understand the North Dakota case. If the guarantor expressly agreed to renewals and guaranteed their payment, and renewals were regularly made, then it is difficult to reconcile the statement of the Court that "the guarantor agrees to be held liable for the particular debt whether evidenced by the original note or by a renewal," and at the same time made the Statute of Limitations commence at the due date of the original note. In such case the guaranty of the renewals meant nothing. If the guarantor did not expressly guarantee the renewals, or if the renewals were not regularly made before maturity, then the case has no application to the present situation.

Believing that those guarantors who paid the demand at the bank could not have successfully pleaded the Statute of Limitations as to the claim against them, we must overrule the demurrer. The guaranty in the present case is continuing in character whether or not it be a "continued guaranty" within the formalized meaning usually ascribed to that term.

The foregoing conclusion, of course, makes the consideration of the second question unnecessary.