Filed 9/21/23 (unmodified opn. attached; second modification)

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| PIEDMONT CAPITAL MANAGEMENT, LLC,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>RAYMOND MCELFISH,<br><br>   Defendant and Respondent. | B316372<br><br>(Los Angeles County Super. Ct. No. 20STCV14138)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 24, 2023, be
modified as follows:

---

**\*** Pursuant to California Rules of Court, rules 8.1100 and
8.1110, this opinion is certified for publication as to all parts
except Part II of the Discussion.

1. On page 15, in the last sentence of the second full paragraph, delete the word "availing" and replace it with "unavailing" so that the full sentence reads:

   > This, too, was error for the reasons explained above, and McElfish's argument to the contrary is unavailing.

   \* \* \*

There is no change in the judgment.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

Filed 9/14/23 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PIEDMONT CAPITAL MANAGEMENT, L.L.C., | B316372 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV14138) |
| v. | |
| RAYMOND MCELFISH, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 24, 2023, be
modified as follows:

---

***     Pursuant to California Rules of Court, rules 8.1100 and
8.1110, this opinion is certified for publication as to all parts
except Part II of the Discussion.

2. On page 13, line 1, insert "(*Jozovich*)" immediately after "223-224" so the full citation reads:

> (*Jozovich v. Central Cal. Berry Growers Assn.* (1960) 183 Cal.App.2d 216, 223-224 (*Jozovich*) ["a contract which calls for the payment of a specified sum for performance by the other party is not 'severable' merely because payments are divided into installments"].)

3. On page 13, immediately following the paragraph that ends with "weight of authority set forth above" insert the following new paragraphs:

> McElfish resists our conclusion with three arguments.
>
> First, he argues that the acceleration clause was not discretionary (and hence that the duty to pay the entire amount is not divisible from the duty to make a single payment) because the HELOC agreement spells out that he would be "in default" the moment he failed to make even one payment. McElfish's conclusion does not follow from its premise:  Although the HELOC agreement provides that a single nonpayment puts the borrower "in default," being in default is merely what gives the lender the option of invoking the acceleration clause in the first place.  McElfish's argument collapses the two events (default and acceleration) into a single

2

event, and robs the discretionary acceleration clause of any effect in derogation of the principle that we cannot rewrite contracts.  (E.g., *24th & Hoffman Investors, LLC v. Northfield Ins. Co.* (2022) 82 Cal.App.5th 825, 833 [courts "do not rewrite any provision of any contract"].)

4.  On page 13, in the first sentence of the first full paragraph, delete the words "McElfish asserts" and replace them with "Second, and relatedly, McElfish argues" so the full sentence reads:

> Second, and relatedly, McElfish argues that lenders should not be allowed to include discretionary acceleration clauses in contracts because their very existence means that lenders are not obligated to sue for the full amount of a debt upon the first instance of a periodic nonpayment, which McElfish asserts is inconsistent with the policy behind statutes of limitations to encourage lawsuits as early as possible.

5.  On page 14, immediately following the paragraph that ends with "undue delay" in line 8, insert the following new paragraph:

> Third and lastly, McElfish argues that a treatise and California case law dictate that a contract is divisible only when "'performance of each party is divided into two or more parts,'" such that contractual duties are not divisible merely because

the duty to pay for a single performance is broken up into multiple payments.  (*Jozovich*, supra, 183 Cal.App.2d at pp. 223-225, quoting 3 Williston, Contracts, p. 2408, § 860A (rev. ed.).)  Applying this principle, McElfish continues, means that the duties owed under the HELOC agreement are not divisible because the lender had only a single performance (that is, loaning him money), such that McElfish's duty to repay every month is a subset of a single performance broken up into multiple payments. McElfish's argument ignores that the case law he cites is designed to set up a default rule for assessing the parties' intent regarding divisibility, and when it is appropriate to infer divisibility from a contractual duty to make payments over time.  As explained above, in this case, the parties have—by their express designation of a maturity date and use of a clause that grants the lender discretion over whether to accelerate that maturity date—explicitly evinced a mutual intent to make the duty to pay the whole amount distinct from (and hence divisible from) the duty to make a single payment.

6. On page 14, line 11, immediately after "McElfish makes two further arguments" insert ", unrelated to the issue of divisibility," so the full sentence reads:

> McElfish makes two further arguments, unrelated to the issue of divisibility, for why the trial

4

court was correct to dismiss Piedmont's breach of contract claim.

\*   \*   \*

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| PIEDMONT CAPITAL MANAGEMENT, L.L.C., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RAYMOND MCELFISH, <br><br> Defendant and Respondent. | B316372 <br><br> (Los Angeles County Super. Ct. No. 20STCV14138) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Reversed.

---

**\*** Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

Wright, Finlay & Zak and Jonathan D. Fink for Plaintiff and Appellant.

Raymond McElfish, in pro. per., for Defendant and Respondent.

\* \* \* \* \* \*

The statute of limitations for a breach of contract claim begins to run at the time of breach (that is, when one party fails to perform as contractually required).  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199 (*Aryeh*).)  Where a contract imposes on a party multiple duties that are *divisible*, however, a breach of each divisible duty gives rise to a separate breach-of-contract claim, each with its own limitations period that begins to run at the time of *each breach*.  (*Eloquence Corp. v. Home Consignment Center* (2020) 49 Cal.App.5th 655, 661 (*Eloquence*).)  Here, we confront how this framework applies to a home equity line of credit (HELOC) agreement that requires the borrower to make monthly payments, but also sets a separate due date for the full debt and contains a discretionary acceleration clause that grants the lender the *choice* whether to demand immediate payment of the full amount if the borrower fails to make a monthly payment.  We must thus ask:  Is the borrower's duty to make a monthly payment under such a HELOC agreement indivisible from the borrower's duty to pay the full amount (such that the statute of limitations to recover the full amount begins to run upon the first missed monthly payment), or are the duties divisible (such that the statute of limitations to recover the full amount is not necessarily triggered by a missed monthly payment)?  We hold it is the latter, chiefly because the

2

HELOC agreement in this case—by setting a fixed maturity date for the full amount and leaving it to the discretion of the lender whether to accelerate that date—necessarily contemplates that a breach as to a monthly payment does *not* constitute a breach as to the full amount. Because the trial court came to a contrary conclusion, and dismissed the lender's complaint as untimely on that basis, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In 2006, Raymond McElfish (McElfish) owned real property located at 3546 Multiview Drive in Los Angeles, California (the property). That year, he executed two deeds of trust against the property.

On March 3, 2006, McElfish executed a deed of trust in favor of MortgageIt, Inc.

On June 27, 2006, McElfish obtained a HELOC from National City Bank, memorialized in an Equity Reserve Agreement and secured by a deed of trust against the property (collectively, the HELOC agreement). The Equity Reserve Agreement states in pertinent part that: (1) McElfish could take "cash advances" against the credit line (of up to $150,000) during a "Draw Period" of 10 years; (2) McElfish then had 20 years—until June 27, 2036—to repay the amount drawn (plus interest and finance charges)[1]; (3) McElfish was required to make monthly payments toward repaying the outstanding balance; and (4) National City Bank could "require" McElfish to "pay the entire

---

[1] This 20-year maturity date applied because McElfish borrowed more than $10,000; had he borrowed less, the maturity date would be 10 years after the draw period ended (that is, June 27, 2026).

3

outstanding balance in one payment" if he "breach[ed] a material obligation," which was defined to include "not meet[ing] the repayment terms." The deed of trust contained parallel provisions, including that National City Bank had the "option" to "accelerate" the debt and demand that "all or any part" of the outstanding debt "become immediately due and payable" "upon the occurrence . . . or anytime thereafter" of a "default" by McElfish by "fail[ing] to make a payment when due." National City Bank further reserved the right to "delay exercising any of its rights" under the agreement "without losing" those rights.

On April 1, 2011, McElfish did not make his monthly HELOC payment. He has not made a payment since.

In December 2012, MortgageIt, Inc. foreclosed on its deed of trust and sold McElfish's property. The foreclosure sale did not net any surplus funds that could pay off the HELOC debt.

On October 10, 2019, Piedmont Capital, L.L.C. (Piedmont)—a debt buyer—purchased the HELOC debt.[2] That same day, Piedmont sent McElfish a "Notice of Acceleration of Debt and 30-Day Demand for Payment." Piedmont formally notified McElfish that it was accelerating the full amount of the HELOC debt owed (that is, $147,569.80 as of the date of the notice) because he was "in default . . . for failing to pay the required monthly Loan installments when due."[3] McElfish did not make any payments in response.

---

[2]     There were two interim transfers of the debt between National City Bank's predecessor and Piedmont.

[3]     The HELOC agreement defined "default" to also include "[a]ny action or inaction" by McElfish that "adversely affect[ed]" the collateral securing the HELOC debt, and Piedmont's

4

## II.    Procedural Background

On April 13, 2020, Piedmont sued McElfish.  Following a demurrer to the original complaint sustained with leave to amend, Piedmont filed the operative first amended complaint for (1) breach of contract, (2) money lent, (3) money had and received, and (4) declaratory relief.  Although Piedmont alleged that the full amount of the HELOC debt McElfish owed totaled $186,587.26, Piedmont conceded that it was "not seeking to collect on any [amounts] that were already barred by the applicable statute of limitations at the time [the] action was filed."

McElfish demurred, chiefly on the ground that Piedmont's 2020 lawsuit was barred by the four-year statute of limitations for breach of contract because the limitations period was triggered when defendant first missed a payment in 2011—not when Piedmont exercised the acceleration clause in October 2019 as alleged in the operative complaint.  Following briefing and a hearing, the trial court sustained McElfish's demurrer without leave to amend.  The court ruled that the HELOC agreement was "not an installment contract," so the limitations period ran "from the date of the last payment in 2011" and Piedmont's 2020 lawsuit therefore was time-barred.

Following the entry of judgment for McElfish, Piedmont filed this timely appeal.

## DISCUSSION

Piedmont argues that the trial court erred in sustaining the demurrer without leave to amend on statute of limitations grounds.

---

acceleration notice identified the foreclosure sale of McElfish's property as another way in which he had defaulted.

5

In assessing whether the trial court erred in this ruling, we ask two questions: "(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).)

In answering the first question, we ask """"whether the complaint states facts sufficient to constitute a cause of action."""" (*Centinela Freeman Emergency Medical Associates v. Health Net of Cal., Inc.* (2016) 1 Cal.5th 994, 1010; *Cal. Dept. of Tax & Fee Admin. v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*Tax & Fee Admin.*); see generally Code Civ. Proc., § 430.10, subd. (e).) In undertaking this inquiry, we accept as true "all material facts properly pled" in the operative complaint (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Tax & Fee Admin.*, at p. 929) as well as those facts appearing in the exhibits attached to it, giving """"precedence"""" to the facts in the exhibits if they """"contradict the allegations"""" (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767). A complaint does not state facts sufficient to constitute a cause of action when it shows, on its face, that the cause of action is barred by the applicable statute of limitations. (*County of Los Angeles v. Commission on State Mandates* (2007) 150 Cal.App.4th 898, 912; *Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.)

In answering the second question, we ask """"whether """"there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment."""""" (*Shaeffer*, *supra*, 44 Cal.App.5th at p. 1134; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) We review the trial court's ruling regarding the first question de novo, and review its ruling regarding the second for

6

an abuse of discretion. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

## I. Timeliness of Breach of Contract Claim

The trial court dismissed Piedmont's breach of contract claim as untimely.

A statute of limitations is the period during which, "in the judgment of the Legislature," a plaintiff must "'institut[e] suit'" or be barred. (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*); *Aryeh*, *supra*, 55 Cal.4th at p. 1191.) A statute of limitations is triggered, and thus the legislatively prescribed limitations period begins to run, when a claim "accrues"—that is, when all elements of the claim have occurred. (*Fox*, at p. 806; *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815; Code Civ. Proc., § 312.) A breach of contract claim has four elements—namely, "(1) the existence of [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Because the very existence of a contract is what gives rise to the duty to perform, and because damages generally flow from the breach of that duty, the statute of limitations period for most breach of contract claims begins to run when a party breaches that contract. (E.g., *Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1583 ["a cause of action for breach of contract accrues for statute of limitations purposes only after there has been a breach of the contract"]; *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120 [same].)

7

Applying these principles is relatively simple when a contract obligates a party to the contract to perform its contractual duties on a single, specified occasion. In that instance, the party's failure to perform on that occasion constitutes a breach of the whole contract, and the statute of limitations for a claim for breach of that whole contract begins to run when the party fails to perform. (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1389 (*Armstrong*) [if parties intend to make "an entire contract, not a severable one, the courts will not find it divisible despite periodic performance"].) But what if the contract obligates a party to the contract to perform its duties on several separate occasions? Does the failure to perform on one occasion constitute a breach of the whole contract? If so, the statute of limitations for a claim for breach of a portion *and* the whole contract would begin to run upon the first breach. (*Armstrong*, at p. 1389.) Or does each failure to perform on a particular occasion give rise to a separate breach of contract? If so, each breach would trigger its own statute of limitations, and a plaintiff could sue for any breaches falling within the limitations period. (*Aryeh, supra,* 55 Cal.4th at pp. 1198-1200 ["separate, recurring invasions of the same right can trigger their own statute of limitations" and "damages arising from those breaches falling within the limitations period" are recoverable].)

The answer turns on whether the various contractual duties are *divisible.* (*Armstrong, supra,* 116 Cal.App.4th at pp. 1388-1389 [where "'breaches of [a contract's] severable parts give rise to separate causes of action, the statute of limitations will generally begin to run at the time of each breach'" and "'each cause of action for breach of a divisible part may accrue at a

8

different time'"]; *Conway v. Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 199-200 [where "each payment is separable from the others and is not a part of a total payment, the agreement" was considered severable "for purposes of determination of the application of the statute of limitations"]; *Eloquence, supra*, 49 Cal.App.5th at p. 661 ["Where divisible, a cause of action for breach of performance as to any particular interval must be brought within the period of limitations after that particular performance was due"]; *County of El Dorado v. Superior Court* (2019) 42 Cal.App.5th 620, 627 ["Where there is an ongoing *severable* wrong, a limitations period generally runs at the time of each breach, making actionable *any* breaches that occur within the limitations period, even if the earlier breaches are untimely"]; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341 [continuous accrual doctrine makes "each breach of a recurring obligation . . . independently actionable"].)

Because the very existence of a contract is the product of the contracting parties' mutual intent (*American Employers Group, Inc. v. Employment Development Dept.* (2007) 154 Cal.App.4th 836, 846-847 ["'[t]here is no contract until there has been a meeting of the minds on *all* material points'"]), the subsidiary question of whether contractual duties are divisible— and hence constitute separate breaches each triggering a separate statute of limitations periods—is also a function of the "'"objective manifestations of the parties' [mutual] intent."'" (*Eloquence, supra*, 49 Cal.App.5th at p. 661; *Armstrong, supra*, 116 Cal.App.4th at p. 1389; Civ. Code, § 1636 ["mutual intention of the parties" controls].) In ascertaining this intent, courts are to examine (1) the plain text of the contract; and, to the extent it exists, (2) "'"extrinsic evidence of such objective matters,"'" such

9

as (a) """"the surrounding circumstances under which the parties negotiated or entered into the contract,"""" (b) the """"nature and subject matter of the contract,"""" and (c) """"the subsequent conduct of the parties."""" (*Eloquence*, at p. 661; see generally *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 654 ["the best indicator of the parties' intent in a written contract is the words they chose for the agreement"]; Civ. Code, § 1638 ["language of a contract is to govern its interpretation"].)

It is undisputed that the HELOC agreement in this case obligated McElfish to make monthly payments, and thus to perform his contractual duties on several occasions. (Cf. *First-Trust Joint Stock Land Bank of Chicago v. Meredith* (1936) 5 Cal.2d 214, 218 [promissory note and mortgage deed "should be construed together and read as one contract"].) But was McElfish's duty to make those monthly payments divisible from his duty to pay the full amount of the loan? We conclude that the answer is "yes." That is because the plain terms of the HELOC agreement[4] obligated McElfish to pay the full, outstanding balance on the line of credit in 2036 while simultaneously granting the lender—now, Piedmont—the *choice* whether to accelerate that maturity date when McElfish missed a monthly payment or at "anytime thereafter." By granting the lender that choice, and by explicitly reserving the lender's ability to "delay exercising" this right "without losing [it]," the HELOC agreement necessarily contemplates that a breach of McElfish's duty to make monthly payments was divisible from his duty to pay the

---

4  Not surprisingly given that this case is on appeal from a demurrer, the parties did not—and, indeed, *could* not—adduce any extrinsic evidence of intent.

10

full amount.[5]  (See *Burrill v. Robert Marsh & Co.* (1934) 138 Cal.App. 101, 107 [phrase "any time thereafter" grants the creditor "the widest possible latitude in time within which to act"]; see generally *Aristocrat Highway Displays, Inc. v. Stricklen* (1945) 68 Cal.App.2d 788, 791-792 [acceleration clause advances the date of payment for the total, as-yet-unpaid balance before that balance otherwise matures]; 5 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 13:130, p. 488 [same].)  Thus, each breach of duty to make a monthly payment gives rise to its own breach-of-contract claim with its own limitations period.

Because the statute of limitations period for a breach of contract claim is four years (Code Civ. Proc., § 337),[6] this means

---

[5]     Both discretionary acceleration clauses and mandatory (that is, automatic) acceleration clauses require the lender to take "affirmative action"—either to elect acceleration (as to discretionary clauses) (*Trigg v. Arnott* (1937) 22 Cal.App.2d 455, 458 (*Trigg*)) or to invoke acceleration (as to mandatory clauses) (*ibid.*; *Jones v. Wilton* (1938) 10 Cal.2d 493, 500).  Because the HELOC agreement in this case contains a discretionary acceleration clause, we need not decide whether one with a mandatory acceleration clause—even if the law requires some affirmative act to invoke it—reflects an intent to make a breach of a monthly payment obligation indivisible from a breach of the obligation to pay the full debt.

[6]     For the first time in its reply brief, Piedmont suggests that the agreement is governed by a six-year limitations period under Ohio law.  Because Piedmont failed to timely or substantively preserve this argument, we deem it waived.  (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["arguments made for the first time in a reply brief will not be entertained"]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [argument not supported with ""reasoned argument"" is waived].)

that Piedmont's 2020 lawsuit is timely as to all missed monthly payments within the four years preceding its filing as well as timely as to all future payments because Piedmont accelerated those payments within that four-year "look back" period. (*Trigg*, *supra*, 22 Cal.App.2d at pp. 458-459; *Webster Bank NA v. Mutka* (Ariz.Ct.App. 2021) 481 P.3d 1173, 1174-1175 [holding that "the statute of limitations does not begin to run on future installments due under a HELOC until the lender accelerates the debt"]; see also *Aryeh*, *supra*, 55 Cal.4th at p. 1192 [noting that suit "may be partially time-barred as to older events but timely as to those within the applicable limitations period"]; *Armstrong*, *supra*, 116 Cal.App.4th at p. 1388 [same].)

The trial court and the parties below focused solely on whether the HELOC agreement was a so-called "installment contract," and treated that determination as being dispositive of the statute of limitations issue. This was error. To begin, the term "installment contract" is a term of art used in a panoply of contexts, many of which have nothing to do with statutes of limitations for breach of contract claims. (E.g., Civ. Code, §§ 1802.6, 1803.2 [defining "retail installment contract" for purposes of the Unruh Act (Civ. Code, § 1801 et seq.) governing rules for financing such contacts]; *Hartford Life & Accident Ins. Co. v. White* (N.D.Cal. June 25, 2010, No. C 09-05668 JSW) 2010 U.S.Dist.LEXIS 63747, *9-*11 [examining timeliness of claim for attorney fees under an installment contract].) More to the point, the fact that the HELOC agreement in this case was or was not an "installment contract" because it obligated McElfish to make periodic (in this case, monthly) payments is—as we explain above—merely "step one" of the pertinent inquiry into how to apply the statute of limitations. (*Jozovich v. Central Cal. Berry*

12

*Growers Assn.* (1960) 183 Cal.App.2d 216, 223-224 ["a contract which calls for the payment of a specified sum for performance by the other party is not 'severable' merely because payments are divided into installments"].) "Step two" requires a court to determine whether or not the duty to make a monthly payment is divisible from the duty to pay the full amount of the debt. Neither the trial court nor Piedmont took that second step. To be sure, the decision in *Bank of America National Trust & Savings Assn. v. McLaughlin* (1957) 152 Cal.App.2d Supp. 911, 915 (*McLaughlin*) suggests that there is no need for a second step and any contract that calls for periodic payments is an "installment contract" which gives rise to separate breach of contract claims without any need to examine the parties' intent as to divisibility. We reject that suggestion—and *McLaughlin*—as being inconsistent with the greater (and more binding) weight of authority set forth above.

McElfish asserts that lenders should not be allowed to include discretionary acceleration clauses in contracts because their very existence means that lenders are not obligated to sue for the full amount of a debt upon the first instance of a periodic nonpayment, which McElfish asserts is inconsistent with the policy behind statutes of limitations to encourage lawsuits as early as possible. (*Fox*, *supra*, 35 Cal.4th at p. 806 [discussing policies].) We reject this assertion. Contrary to what McElfish urges, we are not at liberty to disregard a discretionary acceleration clause because it is a *mutually agreed-upon term* of the contract. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [courts must "disfavor constructions of contractual provisions that would render other provisions surplusage"]); *Brandwein v. Butler* (2013) 218

13

Cal.App.4th 1485, 1507; Civ. Code, § 1641.)  Further, courts have already adopted the doctrine of waiver to serve as a "backstop" of sorts and to bar claims if a lender has unduly delayed in exercising even a discretionary acceleration clause (*Fletcher v. Dennison* (1894) 101 Cal.292, 294; *Tourny v. Bryan* (1924) 66 Cal.App.426, 430; *Holland v. Paddock* (1956) 142 Cal.App.2d 534, 538), although no argument has been made here regarding such undue delay.

## II.    McElfish's Other Arguments

### A.    *Breach of contract claim*

McElfish makes two further arguments for why the trial court was correct to dismiss Piedmont's breach of contract claim. Neither argument has merit.

First, McElfish argues that Piedmont waived the issue of whether the duty to make monthly payments under the HELOC agreement was divisible from the duty to pay the full amount of the loan because the case authority Piedmont cites on appeal— which McElfish erroneously labels as "new *evidence*"—was not cited to the trial court.  (Italics added.)  This argument reflects a fundamental misunderstanding of appellate practice.  What matters is whether *the issue* pursued on appeal was "litigated" in the trial court, and not whether the appellant cited the exact same authorities regarding that issue; here, the statute of limitations issue was squarely presented during the demurrer proceedings.  (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [only those issues "not litigated in the trial court are waived"]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [same].) Regardless, it is well settled that an issue raising "a pure question of law"—such as the issues here regarding the

interpretation of a contract (*Ramirez v. Superior Court* (2023) 88 Cal.App.5th 1313, 1335 (*Ramirez*); *RMR Equipment Rental, Inc. v. Residential Fund 1347, LLC* (2021) 65 Cal.App.5th 383, 392; *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 915-916) and whether a complaint is time-barred (*Raja Development Co., Inc. v. Napa Sanitary Dist.* (2022) 85 Cal.App.5th 85, 91-92; *Aryeh*, *supra*, 55 Cal.4th at p. 1191 )—can be considered "for the first time on appeal." (*Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 219; *Ramirez*, at p. 1335.)

Second, McElfish argues that the contract claim is otherwise barred because Piedmont failed to allege certain disclosures as required by California's Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.). To the extent this Act applies (as it only applies to debt purchased after January 1, 2014 (Civ. Code, § 1788.50, subd. (d)), Piedmont's operative complaint includes the required disclosures (Civ. Code, § 1788.58), and if it did not, Piedmont surely could have cured any defect by amending the complaint.

**B.** *Money lent, money had and received, and declaratory relief claims*

Although the trial court did not expressly rule on Piedmont's other claims for money lent, money had and received, and declaratory relief, the court implicitly sustained the demurrer to those claims without leave to amend when it entered judgment for McElfish. This, too, was error for the reasons explained above, and McElfish's argument to the contrary is availing.

He argues only that Piedmont alleged insufficient facts to state the common count claims because those claims incorporate by refence only the first five introductory paragraphs of the

15

complaint, but not the further substantive allegations in the subsequent paragraphs.  We do not read the complaint so rigidly.  Rather, we must give the operative complaint "a reasonable interpretation, reading it as a whole and its parts in their context," to determine whether the allegations state a cause of action on any viable legal theory, regardless of how they are labeled.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Sims v. Kernan* (2018) 30 Cal.App.5th 105, 110.)  Applying those principles, Piedmont alleged sufficient facts in the complaint, as a whole, to state the common count claims.  And even if the allegations were deficient to state those claims, it is reasonably possible that Piedmont could cure that defect by an amendment.

## DISPOSITION

The judgment is reversed.  Piedmont is entitled to its costs on appeal.

### CERTIFIED FOR PARTIAL PUBLICATION.

_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
 ASHMANN-GERST

_____, J.
 CHAVEZ

16