[Civ. No. 10000.   First Appellate District, Division Two.—December 27, 1935.]

PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation), Appellant, v. HOLLYWOOD KNICKER-BOCKER, INC. (a Corporation), et al., Defendants and Respondents; FRANK D. McGREGOR et al., Interveners and Respondents.

John L. Mace for Appellant.

Heaney, Price, Postel & Parma, Norman W. Ambrose, O'Melveny, Tuller & Myers and Pierce Works, as *Amici Curiae* on Behalf of Appellant.

Gibson, Dunn & Crutcher, H. F. Prince and Frederic H. Sturdy for Interveners and Respondents.

Freston & Files and Ralph E. Lewis for Defendants and Respondents.

Cosgrove & O'Neil, as *Amici Curiae* on Behalf of Respondents.

STURTEVANT, J.—Hollywood Knickerbocker, Inc., a corporation, on July 1, 1929, executed its first closed mortgage 6½ per cent sinking fund gold bonds in the sum of $750,000 to the Bank of America. That bank has since changed its name to Bank of America National Trust and Savings Association. Seven hundred of the bonds were of the denomination of $1,000 each and one hundred of the bonds were of the denomination of $500 each. To each bond there were attached thirty interest coupons. To secure the payment of the bonds Hollywood Knickerbocker, Inc., executed to the Bank of America a trust deed. Thereafter this plaintiff became the owner and holder of a number of said bonds aggregating $204,000. The intervening defendants thereafter became the owners of bonds in the aggregate sum of $426,500. That is, the plaintiff became the owner of more than 25 per cent of

said bonds and the interveners became the owners of 36 per cent of the outstanding bonds. Defaults in the payment of interest on all of said bonds were made on July 1, 1932, and January 1, 1933. Defaults in the payment of taxes and other defaults also occurred. On July 29, 1932, the plaintiff gave notice in writing to the trustee and made a demand upon it that it declare the principal of said bonds to be due. Pursuant to said demand, on July 30, 1932, the trustee did so declare. Later the plaintiff demanded that the trustee pursuant to the power of sale conferred upon it exercise the power of sale, but the trustee failed and refused to do so. On the 22d day of November, 1932, the plaintiff demanded that the trustee commence a suit to foreclose, but the trustee neglected and refused to do so. Its reason for nonaction rested on the fact that on the 27th day of August, 1932, the interveners served on the trustee a demand that the trustee should cease and desist from any further proceedings for the exercise of the power of sale, foreclosure of said bonds, or sale of said property.

The plaintiff thereafter commenced this action to obtain a decree in foreclosure. Its complaint was very full and complete. Bank of America National Trust and Savings Association, as trustee, was made one of the parties defendant. It appeared and filed an answer which, among other things, showed the conflicting demands made upon it. The Hollywood Knickerbocker, Inc., was made a defendant and appeared and filed an answer denying the allegations of the complaint. After obtaining permission so to do the interveners appeared and filed an answer in which they denied many of the allegations of the complaint and in which they set forth certain affirmative defenses. A trial was had before the trial court sitting without a jury. Evidence on all of the issues made by the pleadings was introduced. Thereafter the trial court made findings in favor of the defendants and from the judgment entered thereon the plaintiff has appealed. The findings so made by the trial court were to the general effect that the plaintiff was not entitled to maintain the action because of certain covenants contained in the bonds and the deed of trust executed to secure the payment of the bonds. All of the bonds recited they would be paid on July 1, 1944, together with interest at 6½ per cent per annum payable on the first days of January and July in each year. Other provisions con-

tained in the bonds material to a consideration of this case include the following:

"For a description of the properties mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the bonds are issued and secured, reference is made to said mortgage or deed of trust, to all the provisions of which the holder hereof, by accepting this bond, assents.

" . . . In case an event of default, as defined in said mortgage or deed of trust, shall occur, the principal of this bond, if it be then outstanding, may be declared and become due and payable, as provided in said mortgage or deed of trust."

Provisions of the trust deed material to the questions presented to us are as follows:

"ARTICLE IX.

" . . . Section 3. If one or more of the events of default shall happen, the Trustee may, and upon the written request of the holders of twenty-five per cent (25%) in amount of the bonds secured hereby and then outstanding, shall, by notice in writing delivered to the Company, declare the principal of all bonds secured hereby then outstanding to be due and payable immediately, and upon any such declaration the same shall become and be immediately due and payable, anything in this indenture or in said bonds contained to the contrary notwithstanding. . . .

"Section 4. If one or more of the events of default shall happen, the Trustee in its discretion may, and upon the written request of the holders of twenty-five per cent (25%) in amount of the bonds secured hereby and then outstanding, shall proceed to protect or enforce its right or rights of .the bondholders under this indenture by a suit in equity or action at law, either for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the foreclosure of this indenture, or for the enforcement of any other appropriate legal or equitable remedy as the Trustee shall deem most effectual in support of any of its rights or duties hereunder; and upon instituting such proceedings or in order to take possession as hereinbefore provided, the Trustee shall be entitled to the appointment of a receiver of the trust estate and to the sale of the trust estate as an entirety, if the Court in its discretion shall so order. . . .

## "ARTICLE X.

" . . . Section 2. No holder of any bond or coupon secured hereby shall have any right to institute any suit, action or proceeding at law or in equity for the foreclosure of this indenture or for the execution of any trust or power hereof or for the appointment of a receiver or for any other remedy under or upon this indenture, unless such holder previously shall have given to the Trustee written notice of an event of default; and unless also the holders of twenty-five per cent (25%) in amount of the bonds secured hereby then outstanding shall have made written request upon the Trustee and shall have furnished the Trustee reasonable indemnity against all costs, attorney's fees and expenses, and shall have afforded to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceedings in its own name; and such notification and request hereby are declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this indenture, and to any action or cause of action for foreclosure, or for the appointment of a receiver, or for any other remedy hereunder; it being understood, intended and hereby provided that no one or more holders of bonds or coupons secured hereby shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the lien of this indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided, for the equal benefit of all holders of such outstanding bonds and coupons. . . .

## "ARTICLE XI.

" . . . Section 16. (a) In the event that the Trustee, upon the happening of an event of default, is served with two or more written requests each signed by the holders of twenty-five per cent (25%) in amount or more of the outstanding bonds, which shall request that the Trustee shall do different things, the Trustee shall follow the direction contained in the written request signed by the holder or holders of the largest principal amount of the bonds. (b) In the event that the Trustee, upon the happening of an event of default, shall have taken some action pursuant to its duties hereunder, whether upon its own discretion or upon the re-

quest of the holders of twenty-five per cent (25%) in amount of the bonds secured hereby, it shall be controlled in the matter of continuance or discontinuance of such action by the written request or direction of a majority in amount of the bonds secured hereby, (c) except, however, that such control shall not be exercised to stay or suspend a foreclosure suit instituted by the Trustee, nor to prevent such foreclosure from being filed, nor to waive or stay any proceedings to be taken by the Trustee in case of an event of default unless the principal of all bonds secured hereby, which have matured according to their terms, has been paid.'' (Parentheses ours.)

In its opening brief the plaintiff states that the sole ques-tion in the case at bar is what construction is to be placed upon the terms of the trust indenture. With that statement defendants agree. ■■■ ''In the absence of any provision to the contrary, default may be taken advantage of by the holder of a single bond or coupon. (Citing authorities.)'' (*California Safe Deposit & Trust Co.* v. *Sierra Valleys R. Co.*, 158 Cal. 690, 694 [112 Pac. 274, Ann. Cas. 1912A, 729].) But there are many valid provisions that can be inserted in the trust agreement which will limit the rights of the bondholders in such matters and which, in the absence of a charge of fraud, will have that effect. That such is the rule and for some of those provisions see *Rodman* v. *Richfield Oil Co. of California et al.*, 66 Fed. (2d) 244, and *Munch* v. *Central West Public Service Co.*, 128 Neb. 645 [259 N. W. 736], and cases there cited. ■■■ In the indenture of trust before us some provisions limiting the rights of the bondholders were in-serted. We have hereinabove set forth those provisions which are to be construed. The construction deemed necessary involves the provisions of section 16, article XI, *supra*. Division (a) as marked by us speaks of ''different things''. The plaintiff asserts that it demanded that the trustee should foreclose and that the interveners demanded that the trustee should stay his hand—should do nothing, and therefore the trustee was not served with notices to do ''different things''. The point is without merit. Manifestly in such matters as here involved nonaction is ''thing'' as material as affirmative action. Moreover it was one of the identical things, if not the identical thing, about which the parties were contracting. Both the bond and the indenture of trust contained provisions accelerating the date of payment of the principal. Pointing

to those provisions the plaintiff makes two different conten-
tions. It asserts that such provisions are self-sufficient and
that section 16, article XI, neither adds to nor subtracts from
the plaintiff's rights. ▇ In the next place it contends
that so much of section 16, article XI, as we have marked
division (c), should be read as follows: " . . . except, how-
ever, that such control shall not be exercised to stay or suspend
a foreclosure suit instituted by the trustee, nor to prevent
such foreclosure from being filed nor to waive or stay any
proceedings to be taken by the trustee in case of an event of
default unless the principal of all bonds secured hereby which
have matured according to the specific pay date written
thereon or by acceleration of payment (sec. 4, art. IX) has
been paid". As all bonds contained the same pay date, and
as the acceleration of the pay date operated on every bond,
the construction contended for works an absurdity. If in any
given contingency all bonds have been paid, there will be no
occasion for the commencement of foreclosure proceedings.
If the instrument is given such a construction no force or
effect is given to divisions (b) and (c) which we have marked
and which are the gravamen of the instrument. The word
"maturity" is used many times in the indenture of trust. In
every place we have noticed it was used as meaning July 1,
1944. In the last edition of Webster's Unabridged Dictionary
one of the ordinary meanings of the word is stated as "termi-
nation of the period a note or other obligation has to run".
Such ordinary meaning should be adopted (Civ. Code, sec.
1644). ▇ As the plaintiff contends, we are bound to con-
strue the indenture of trust within its four corners. From a
casual inspection the document is an attempt to place in the
hands of a majority of the bondholders the power to control
and direct the policy which will best protect and serve the
interests of all of the bondholders. That being the clear in-
tention of the parties, the contract should be so construed.
(Civ. Code, sec. 1636.) There is also that other cardinal rule
that the whole of a contract is to be taken together, so as to
give effect to every part, if reasonably practicable, each clause
helping to interpret the other. That rule we think is pecu-
liarly applicable in the instant case. The plaintiff cites and
relies on *Burrill* v. *Robert Marsh & Co.*, 138 Cal. App. 101
[31 Pac. (2d) 823], and *San Francisco Theological Seminary*
v. *Monterey County Gas & Elec. Co.*, 179 Cal. 166 [175 Pac.

693]. Neither case is opposed to anything we have said regarding the particular facts in this case.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.