[Civ. No. 11543. First Appellate District, Division Two.—November 26, 1940.]

GEORGE P. LAUINGER et al., Appellants, v. CARRILLO BUILDING COMPANY (a Corporation) et al., Respondents.

Byrne, Lamson & Jordan for Appellants.

Heaney, Price, Postel & Parma and Kenneth W. Watters, Jr., for Respondents.

NOURSE, P. J.—The plaintiffs sued to procure the foreclosure of a certain bond indenture and for the removal of the trustee acting thereunder. The defendants' demurrer to the complaint was sustained without leave to amend.

The gist of the complaint is that the defendant company issued its bonds amounting to $300,000 in 1924 for the purpose of erecting a hotel building in the city of Santa Bar-

bara and executed a certain bond indenture to secure them. Default was made in the payment of bonds maturing after September, 1931, and, in April, 1933, the company induced the owners of more than seventy-five per cent of the outstanding bonds to execute a "deferment contract" under which they waived payment of certain interest then due and agreed to reduce the rate of interest thereafter to be paid. The bondholders signing this contract agreed not to institute any legal proceedings because of the failure of the company to live up to the terms of the bond indenture, and requested the trustee to refrain from declaring a forfeiture because of failure to meet those terms. It is alleged that the security is not adequate for the outstanding bonds, that the security is steadily diminishing, that the plaintiffs will be injured if the bond indenture is not foreclosed, and that the income from the property is insufficient to pay the bonds as they mature. Plaintiffs did not sign the "deferment contract", and in August, 1936, made demand upon the trustees to foreclose the bond indenture, or sell the property to satisfy the indebtedness of the company. This demand was refused by the trustee because of the "deferment contract" and "solely upon the request of the bondholders signing said document".

The plaintiffs represent less than ten per cent of the bondholders. More than ninety per cent signed the "deferment contract" requesting that no foreclosure proceedings be instituted. The bond indenture is the contract under which all the rights and the liabilities of the parties arise. The controversy rests on the provisions of section 2 of article X of the bond indenture reading: "No holder of any bond or coupon secured hereby shall have any right to institute any suit, action or proceeding at law or in equity for the foreclosure of this indenture or for the execution of any trust or power hereof, or for the appointment of a receiver or for any other remedy under or upon this indenture, unless such holder previously shall have given to the Trustee written notice of an event of default; and unless also the holders of twenty-five percent (25%) in amount of the bonds secured hereby then outstanding shall have made written request upon the Trustee and shall afforded to it a reasonable opportunity either to proceed to exercise the power hereinbefore granted, or to institute such action, suit or proceedings in its own name; and such notification and request hereby are declared in every such case, at the option of the Trustee, to

be conditions precedent to the execution of the powers and trusts of this indenture, and to any action or cause of action for foreclosure, or for the appointment of a receiver, or for any other remedy hereunder; it being understood, intended and hereby provided that no one or more holders of bonds or coupons secured hereby shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the lien of this indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided, for the equal benefit of all holders of such outstanding bonds and coupons; provided, however, that nothing herein contained shall defeat the right of an individual bondholder or of individual bondholders to pursue his or their legal or equitable remedy where his or their right of action arises out of collusion, fraud, gross negligence, or wilful misconduct.''

The validity of such provisions in a bond indenture can no longer be questioned. We had occasion to so hold regarding similar provisions in *Pacific States Savings & Loan Co.* v. *Hollywood Knickerbocker, Inc.,* 11 Cal. App. (2d) 56 [52 Pac. (2d) 1014]. We there cited *Rodman* v. *Richfield Oil Co. of California et al.,* 66 Fed. (2d) 244. Because of the almost identical terms of the contract the Rodman case is even more applicable here. As to the validity of these terms of the contract the Circuit Court quoted from *Chicago D. & Vincennes Railroad Co.* v. *Fosdick,* 106 U. S. 47, 77 [27 L. Ed. 47], as follows: ''It is an agreement which the parties were at liberty to make. There is nothing in it illegal or contrary to public policy. And while it is in the nature of a forfeiture, it is one against which, when it has taken place according to the fair meaning of the parties, courts of equity will not relieve. It was so held in *Noyes* v. *Clark,* 7 Paige (N. Y.), 179 [32 Am. Dec. 620]; *Noonan* v. *Lee,* 2 Black 499 [17 L. Ed. 278]; *Olcott* v. *Bynum,* 17 Wall. 44 [21 L. Ed. 570].'' As to the propriety of such a limitation upon the rights of the minority the Circuit Court in the Rodman case, *supra,* page 250, said: ''We have already quoted Supreme Court decisions on the injustice of permitting one or a few bondholders from circumventing the wishes of the majority, by instituting proceedings for foreclosure when the majority are in favor of deferring such suit. If the indenture gives a minority a right thus to act—as does the

indenture in the instant case—the provisions of that document must be strictly adhered to; for, as we have seen, a stipulation for foreclosure proceedings, even at the will of the *majority*, are 'in the nature of a penalty'. *A fortiori*, a stipulation giving a *minority* the right to authorize foreclosure may, in the language of the Vincennes case, be regarded as '*stricti juris*'."

It would serve no purpose to discuss the cases cited by appellant because they are but generalizations of the accepted rule that equity will relieve a party from his contract where fraud or bad faith is shown. Here the bond indenture permitted less than twenty-five per cent of the bondholders to sue where the right of action arose out of "collusion, fraud, gross negligence or wilful misconduct." The allegations of the complaint do not state such a case. They merely disclose a disagreement on the part of a small minority with the economic policies of the majority. The allegations which might be said to hint at collusion between the trustee and the majority show nothing more than that the trustee has followed the demands of the majority in strict accord with the terms of the bond indenture. There are no allegations which sound in fraud, gross negligence, or wilful misconduct. What is pleaded in reference to the "interest" of the trustee, and the purported hostile attitude adverse to the plaintiffs, does not come within any of the terms of the contract. (*Rodman* v. *Richfield Oil Co. of California, supra,* p. 251.) The cases holding that a court of equity may supervise the conduct of and remove a derelict trustee have no bearing on the issue here for the same reasons.

This case rests squarely upon the contract of the parties. They agreed that when those holding more than twenty-five per cent in amount should request a foreclosure the trustee should take the necessary and proper proceedings, that when those holding more than twenty-five per cent requested the trustee not to foreclose, he should refrain. The trustee has followed these terms of the contract, and the complaint pleads a case of performance of the duties of the trusteeship and no case of dereliction. For these reasons it fails to state a cause for any equitable relief.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 23, 1941.