[Civ. No. 14495.  First Dist., Div. One.  Dec. 12, 1950.]

A. HAAS, Appellant, v. PALACE HOTEL COMPANY OF SAN FRANCISCO (a Corporation) et al., Respondents.

110

Crimmins, Kent, Draper & Bradley, Martin Lalor Crimmins, Jr., and Robert G. Taylor for Appellant.

Hall, Henry & Oliver, Chafee E. Hall, Stephen McReavy, McCutchen, Thomas, Matthew, Griffiths & Greene, Farnham P. Griffiths and Morris M. Doyle for Respondents.

PETERS, P. J.—Plaintiff, as the holder of overdue and unpaid bonds issued by the Palace Hotel Company of San Francisco, brought this action to foreclose the mortgage securing those bonds and for such other relief as the court might deem proper. The holders of other bonds issued by the defendant company intervened in opposition to plaintiff. The defendants and interveners interposed general and special demurrers to the complaint. The demurrers were sustained with leave to amend. Plaintiff declined to amend and stipulated that a judgment of dismissal should be entered, subject to her right to appeal. Judgment of dismissal was entered and plaintiff appeals.

The problems involved on this appeal arise out of the following facts:

In 1925 the defendant, Palace Hotel Company, issued bonds in the total amount of $2,500,000. These bonds were in $1,000 denominations and had semiannual 5 per cent interest coupons attached. They were payable to bearer, or, if registered, to the registered owner, and matured February 1, 1945. They are referred to by the parties as the "1945 bonds." They were secured by a first mortgage to defendant American Trust Com-

pany, as trustee. This mortgage is referred to as the "original mortgage." By its terms the Palace Hotel, and the real property upon which it is located, were hypothecated to secure the interest and principal of the bonds.

Plaintiff is the owner and holder of 63 of these 1945 bonds together with certain interest coupons attached thereto. This constitutes about 2½ per cent of the 1945 issue. On February 1, 1945, the principal amount of plaintiff's bonds, together with the interest coupons attached, became or had become payable, but no part of the principal or interest represented by the coupons had been paid.

After the default on the bonds, a plan of reorganization was submitted to the holders of the 1945 bonds in June of that year. Under this plan of reorganization the Palace Hotel Company and the trustee entered into a mortgage of chattels and trust indenture, referred to as the "1945 indenture," and the 1945 bonds and original mortgage were amended as to the bondholders who consented to the plan, to provide for a reduction of interest to 4 per cent, and an extension of maturity to February 1, 1965.

The complaint alleges that "in excess of seventy-six (76) per cent of the owners and holders of the then outstanding 1945 bonds did consent and agree" to the reorganization. The 1945 indenture, attached to the complaint as an exhibit, recites that "the owners and holders of more than 84% in principal amount of the 1945 Bonds outstanding" have consented to the plan. The interveners claim in their briefs, and appellant does not claim to the contrary, that more than 93 per cent of the holders of the outstanding bonds consented. Neither the plaintiff, nor her predecessors, consented to this plan of reorganization.

On January 3, 1949, the plaintiff requested the trustee to institute suit to enforce payment of her bonds and coupons, and for the appointment of a receiver. Prior to this date plaintiff had presented her bonds and coupons for payment, but payment was refused. The trustee refused to bring an action to enforce payment of plaintiff's bonds, whereupon this action was instituted on February 18, 1949.

Although the complaint does not set forth as an exhibit the terms of the original mortgage, it does attach a copy of one of the 1945 bonds. It appears on the face of the bonds that they incorporated by reference the terms of the original mortgage. In the trial court and on this appeal it was and is admitted and conceded by all the parties involved that the

original mortgage in article VII contained the following provision: "No holder of any bond or coupon hereby secured shall have the right to institute any suit or proceeding for the sale of the property subject to the lien hereof, or for the foreclosure hereof, or for the appointment of a Receiver, or for any other remedy hereunder, unless such holder previously shall have given to the said Trustee written notice of the default of which he complains, nor unless the holders of one-fourth (1/4) of the bonds hereby secured and then outstanding shall have made written request to the said Trustee for such action, or for action hereunder, and shall have given to the said Trustee a reasonable opportunity to take such action, and the said Trustee shall have neglected to take appropriate action thereon, nor unless they shall have offered to the said Trustee adequate security and indemnity against all loss, costs and liabilities to be incurred in the premises."

In the trial court it was conceded that such provision was properly before that court, and, it is conceded, that the legal effect of this provision presents one of the key points on this appeal.

It is obvious that since plaintiff owns but 2½ per cent of the unpaid bonds, and since at least 84 per cent of the holders of such bonds consented to the reorganization plan, article VII, above quoted, is a complete bar to this proceeding, if valid and if still effective. Plaintiff does not directly challenge the validity of this provision, but contends that such provision is no longer effective because it was expressly rescinded by the 1945 indenture. In this connection plaintiff points out that the 1945 indenture, among other things, purports to amend, cancel and annul several provisions of the original mortgage, and contends, in particular, that the 1945 indenture expressly cancelled, annulled and rescinded article VII of the original mortgage. Part I of the 1945 indenture is entitled "Amendment of Original Mortgage." Subdivision 5 of part I reads as follows: "Articles III to XVII, inclusive, of the Original Mortgage shall be and are hereby cancelled, annulled and rescinded and there shall be and are hereby substituted in lieu thereof the following Articles III to XVIII, inclusive."

Respondents and interveners rely on two other provisions of the 1945 indenture expressly substituted for those cancelled, or purportedly cancelled, by the above-quoted clause—article X, section 10.19, and a portion of article XVIII, Part III.

Article X, section 10.19, of the 1945 indenture reads as follows:

"*Limitations on Bondholders' Rights to Sue.* No holder of any Bond or coupon issued hereunder shall have the right to institute any suit, action or proceeding in equity or at law for the foreclosure of this Indenture, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for the enforcement of any other remedy under or upon this Indenture, unless

"(1) such holder shall previously have given to the Trustee written notice of some existing default, as hereinbefore provided; and

"(2) the holders of not less than twenty-five per cent (25%) in principal amount of the Bonds at the time outstanding shall, after the right to exercise such powers, or right of action, as the case may be, shall have accrued, have requested the Trustee in writing to act; and

"(3) such holder or holders shall have offered to the Trustee security and indemnity satisfactory to them against the costs, expenses and liabilities to be incurred therein or thereby; and

"(4) the trustee shall have refused or neglected to comply with such request for a period of sixty (60) days.

"Notwithstanding any other provision of this Indenture, the right of the holder of any Bond to receive payment of the principal of and interest on such Bond, on or after the respective due dates expressed in such Bond, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except that no Bondholder may institute any such suit, action or proceeding if and to the extent that the institution or prosecution thereof or the entry of a judgment or a decree therein would, under applicable law, result in the surrender, impairment, waiver or loss of the lien of this Indenture upon any property subject to such lien."

The portion of article XVIII, part III, relied upon by interveners and respondents reads as follows: ". . . This Mortgage of Chattels and Trust Indenture is not intended to, does not, and shall not be construed to affect, impair, change or modify, in any manner or to any extent whatsoever, any of the rights, powers or privileges of the holders of the 1945 Bonds; nor to relieve the Company or the Trustee from any duty or obligation to any holder of the 1945 Bonds under the terms and provisions thereof or of the Original Mortgage or said Chattel Mortgage dated December 7, 1933; nor to

grant to or confer upon the Trustee or the holders of 1965 Bonds any rights or powers as against any holder of 1945 Bonds not granted or conferred under the provisions of the Original Mortgage or said Chattel Mortgage dated December 7, 1933; *provided, however,* that, to the extent permitted by law, all of the rights, provisions, benefits and remedies provided in this Mortgage of Chattels and Trust Indenture in favor of the holders of any of the outstanding bonds, including, but not limited to, the security and benefits of the sinking fund provided for in the amended Article VI, the benefits of the redemption provisions provided for in the amended Article V and the waiver of the statute of limitations provided for in Section 7.17, shall be available to and inure to the benefit of the holders of 1945 Bonds.''

It is quite apparent that, if either article VII of the original mortgage or article X, section 10.19 of the 1945 indenture is applicable (assuming their validity) to plaintiff, the trial court properly sustained the demurrer. Plaintiff does not aver that the holders of 25 per cent of the outstanding bonds have joined in the action, but, in fact, alleges that she owns but 2½ per cent of the bonds, and that over 76 per cent of the holders of such bonds consented to the reorganization.

There can be no doubt that provisions such as those contained in article VII of the original mortgage, and article X, section 10.19 of the 1945 indenture, are valid (unless prohibited by some specific statute and unless fraud or collusion is present) and constitute a complete bar to the legal enforcement of payment of the bonds or foreclosure of the security unless the requisite percentage of bondholders join in the action. The Supreme Court in *Dietzel* v. *Anger,* 8 Cal.2d 373, at page 375 [65 P.2d 803], after quoting a clause somewhat similar to those here involved, stated: ''In so far as these provisions relate to the trust indenture and deal with actions involving the security, there is no doubt either as to their applicability or their validity.'' In *Lauinger* v. *Carrillo Building Co.,* 41 Cal.App.2d 660 [107 P.2d 287], less than 10 per cent of the bondholders attempted to foreclose a bond indenture containing a 25 per cent clause similar to that contained in article VII. The bonds were in default and over 90 per cent of the bondholders had consented to a deferment contract. A demurrer to the complaint was sustained without leave to amend. In affirming the trial court, the appellate court stated (p. 662): ''The validity of such provisions in a bond indenture can no longer be questioned. We had occasion to so hold regarding

similar provisions in *Pacific States Savings & Loan Co.* v. *Hollywood Knickerbocker, Inc.*, 11 Cal.App.2d 56 [52 P.2d 1014]. We there cited *Rodman* v. *Richfield Oil Co. of California et al.*, 66 F.2d 244. . . . As to the validity of these terms of the contract the Circuit Court quoted from *Chicago D. & Vincennes Railroad Co.* v. *Fosdick*, 106 U.S. 47, 77 [27 L.Ed. 47] . . ., as follows: 'It is an agreement which the parties were at liberty to make. There is nothing in it illegal or contrary to public policy. And while it is in the nature of a forfeiture, it is one against which, when it has taken place according to the fair meaning of the parties, courts of equity will not relieve. . . .' As to the propriety of such a limitation upon the rights of the minority the Circuit Court in the Rodman case, *supra,* page 250, said: 'We have already quoted Supreme Court decisions on the injustice of permitting one or a few bondholders from circumventing the wishes of the majority, by instituting proceedings for foreclosure when the majority are in favor of deferring such suit. If the indenture gives a minority a right thus to act—as does the indenture in the instant case—the provisions of that document must be strictly adhered to; for, as we have seen, a stipulation for foreclosure proceedings, even at the will of the *majority,* are "in the nature of a penalty." *A fortiori,* a stipulation giving a *minority* the right to authorize foreclosure may, in the language of the Vincennes case, be regarded as *"stricti juris".' "*

As already pointed out, it is the theory of appellant that article VII of the original mortgage was expressly cancelled by the provisions of subdivision 5 of part I of the 1945 indenture above quoted. The argument is that the 1945 indenture was a contract for the benefit of third persons (the nonconsenters) and that she did not have to become a consenter in order to accept its beneficial provisions. She claims that there is nothing expressed in the 1945 indenture which prevents a nonconsenter from bringing a foreclosure action. Thus, what appellant is contending is that the 1945 indenture confers on nonconsenters a right to foreclose the original mortgage, although the original mortgage denied her that right, and although the 1945 indenture denied that right to consenters. Such an interpretation of the 1945 indenture is strained, unjustified, and would defeat its very purpose. The purpose of the 1945 indenture was to work out a plan of reorganization for the consenting bondholders. This purpose is expressed in one of its opening paragraphs as being to provide "the amend-

ment of the 1945 Bonds and the Original Mortgage . . . *as to those who consent to the Plan,* to extend the maturity . . . and to reduce the rate of interest . . .'' (Italics added.)

Under this clause, the 1945 indenture only affected the rights of consenting bondholders. Appellant, however, contends that some of the provisions of the 1945 indenture were undoubtedly intended to confer greater protection and additional rights of security upon the nonconsenting bondholders. In this connection appellant refers to the following provision of the 1945 indenture appearing toward the end of that document: ''. . . to the extent permitted by law, all of the rights, provisions, benefits and remedies provided in this Mortgage of Chattels and Trust Indenture in favor of the holders of any of the outstanding bonds, including, but not limited to, the security and benefits of the sinking fund provided for in the amended Article VI, the benefits of the redemption provisions provided for in the amended Article V and the waiver of the statute of limitations provided for in Section 7.17, shall be available to and inure to the benefit of the holders of 1945 Bonds.''

It is quite apparent from the above provision, and other provisions of the 1945 indenture, that it was the basic purpose of that document to put the 1945 nonconsenting bondholders on a parity with the 1965 consenting bondholders so far as possible. It is impossible, however, to spell out of the 1945 indenture an intent to give the nonconsenting bondholders rights not only superior to but which would destroy the security of the consenting bondholders. Such a strained construction of the 1945 indenture would defeat its declared purpose. ■■■ Even if there is an ambiguity in the 1945 indenture, this court must resolve that ambiguity so that the best interests of the greatest number of the bondholders will be served. (*Pacific States Savings & Loan Co.* v. *Hollywood Knickerbocker, Inc.,* 11 Cal.App.2d 56, 62 [52 P.2d 1014].) ■■■ The intention of the parties is clear, and the instrument may be construed, reasonably, to effectuate that intention. It is, therefore, incumbent upon this court to construe the instrument so as to effectuate its obvious purposes. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 772 [128 P.2d 665].) ■■■ So construed, it is our opinion that subdivision 5 of part I of the 1945 indenture cancelled article VII of the original mortgage only as to consenting bondholders, and as to nonconsenters it left that provision unaffected. This interpretation is suggested, if in fact not com-

pelled, by the clause of the 1945 indenture declaring that it "is not intended to, does not, and shall not be construed to affect, impair, change or modify, in any manner or to any extent whatsoever, any of the rights, powers or privileges of the holders of the 1945 Bonds."

■ Even if the 1945 indenture did cancel article VII of the original mortgage in favor of the nonconsenters, then such nonconsenters would be subject to the substantially identical provision in the 1945 indenture contained in article XVIII and above quoted. Consenters could only foreclose upon securing the consent of 25 per cent of the bondholders. Appellant cannot accept the clause cancelling article VII (subdivision 5 of part I of the 1945 indenture) as a contract between the Palace Hotel Company and consenters and the trustee for the benefit of nonconsenters, without accepting the eliminating clause *in toto*. The eliminating clause, above quoted, after cancelling certain provisions of the original mortgage (including article VII), replaces the eliminated articles with other sections. One of the substituted provisions is section 10.19, which provides the same limitation on foreclosures as was contained in the original mortgage. While a person may accept the benefits of a contract made for his benefit, such acceptance implies an acceptance of the obligations necessarily connected with the contract. This fundamental principle is stated as follows in section 1589 of the Civil Code: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

Thus, appellant is faced with this dilemma—if article VII of the original mortgage is still effective, she is barred from bringing the action under that section. If that article was cancelled by the 1945 indenture as to nonconsenters, then section 10.19 of that indenture is applicable, and she may not maintain the action under that section. Any other construction would defeat the intent of the parties, and would result in putting nonconsenters not only in a more advantageous position than consenters, but would give the holder of one bond who did not consent the right of foreclosure, which would defeat the entire purpose of the 1945 indenture.

■ The next major contention of appellant is that the 1945 indenture had to qualify under the Trust Indenture Act of 1939 (15 U.S.C.A., § 77aaa et seq.), which is admitted by respondent and interveners, and that under that statute

the 1945 indenture was required to remove the restriction on foreclosure.

This contention is predicated upon section 316(b) (15 U.S.C.A., § 77ppp (b)) which requires that "The indenture to be qualified shall provide that, notwithstanding any other provision thereof, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except as to a postponement of an interest payment consented to as provided in paragraph (2) of subsection (a), and except that such indenture may contain provisions limiting or denying the right of any such holder to institute any such suit, if and to the extent that the institution or prosecution thereof or the entry of judgment therein would, under applicable law, result in the surrender, impairment, waiver, or loss of the lien of such indenture upon any property subject to such lien."

There is another section of the 1939 act which makes section 316(b) inapplicable to any securities issued prior to 1939, and that is, section 304(a) (15 U.S.C.A., § 77ddd (a)) which provides:

"The provisions of this subchapter shall not apply to any of the following securities: . . .

"(3) any security which, prior to or within six months after the enactment of this subchapter, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offering of any such security by an issuer subsequent to such six months."

The bonds held by appellant were issued in 1925, so that they come within the express exemption contained in section 304(a). The new 1965 bonds are, admittedly, subject to the terms of the 1939 statute. That is undoubtedly the reason why the 1945 trust indenture was executed, and why that indenture amends the original mortgage, as to consenters, by including the consent contained in article XVIII above quoted. This is a complete answer to appellant's contentions in reference to section 316(b) of the Trust Indenture Act of 1939. That section, whatever its proper interpretation, just has no application to bonds issued in 1925.

The argument of appellant on this issue is somewhat difficult to follow. She argues that section 316(b) of the Trust

Indenture Act of 1939 is embodied in section 10.19 of the 1945 indenture; that "the purpose of this provision was to remove any restrictions such as those contained in Article VII of the original mortgage. Thus, the express annulment of Article VII . . . was absolutely necessary in order to comply with the Trust Indenture Act." (App. Op. Br. p. 13.) According to appellant it was because of the 1939 act that "the defendant and the 1965 bondholders were required to put themselves in the vulnerable position where any nonconsenting bondholder might immediately institute suit to enforce payment of their bonds and coupons, although the 1965 bondholders could not realize on their bonds until February 1, 1965 or the sooner default of defendant Palace Hotel Company under the 1945 indenture. However, . . . such 1965 bondholders are protected by the provision that in the event of final judgment of foreclosure, that all the 1965 bonds would forthwith become due and be entitled to the benefits of the foreclosure decree." (App. Op. Br. p. 14.)

This is the heart of appellant's argument on this issue. If we understand it correctly, it means that appellant believes that after the 1945 trust indenture was executed, nonconsenters were released from the restrictive provisions of article VII of the original mortgage, and were not subject to the limitations contained in the 1945 indenture. Thus, according to appellant, after the 1945 indenture was executed, the holder of one nonconsenting bond could foreclose and thus accelerate the due date of the entire indebtedness. According to this interpretation, the execution of the 1945 indenture was a totally useless gesture unless 100 per cent of the holders of the 1945 bonds consented. Such an interpretation is compelled, says appellant, by section 316(b) of the Trust Indenture Act of 1939 and section 10.19 of the 1945 indenture.

This argument of appellant is fundamentally predicated upon her argument that article VII of the original mortgage was annulled by the 1945 indenture. This argument has already been considered and, as already held, article VII was not annulled as to nonconsenters, and, if it were, section 10.19 of the 1945 indenture was substituted. If article VII was annulled by subdivision 5, part I, of the 1945 indenture as to nonconsenters, and if plaintiff wants to accept such annullment, she must *consent* by virtue of section 1589 of the Civil Code to the obligation contained in section 10.19 of the 1945 indenture. Thus, whether article VII was or was not cancelled by the 1945 indenture, section 316(b) of the Trust

Indenture Act of 1939 does not require the abolition of the restriction on foreclosure.

Moreover, appellant's construction is not sound. Section 10.19 of the 1945 indenture does not provide that regardless of any provision of the original mortgage she may institute suit on the bonds. The precise language is "Notwithstanding any other provision of this Indenture"—i. e., the 1945 indenture—the rights of any holder of a bond shall be, etc. The purpose of this provision, and of section 316(b) of the Trust Indenture Act of 1939, was to assure the 1965 bondholders that the restrictive provisions of the 1945 indenture immediately preceding the language under discussion, should not be construed as impairing their rights to enforce the 1965 bonds after they matured. The clause has nothing to do with the rights of nonconsenters.

Respondents and interveners trace the legislative history of section 316(b) and contend that the background of the section demonstrates that it has nothing to do with a suit by a bondholder to foreclose. Respondents and interveners seek to show by this analysis that section 316(b) is aimed at protecting such right of the individual bondholder to sue on his bond as he may have by applicable state law, and has nothing to do with his right to foreclose the security. This argument tends to support the position of respondents and interveners, but its correctness need not be considered now because of the other conclusive answers already given to appellant's arguments on this issue.

The last major contention of appellant is that if she is not entitled to foreclosure of the original mortgage, she is at least entitled, in this action, to a money judgment for the principal and interest due on her bonds, under her prayer for "other and further" relief contained in her complaint. Assuming that under a prayer for "further relief" in a foreclosure action a trial court *must* grant a money judgment at law in such an equity action, if such remedy is available, the present argument runs directly afoul of section 726 of the Code of Civil Procedure. That section provides: "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter."

The complaint shows on its face that it is secured by a mortgage. There is no allegation that the security has become valueless. Thus, it appears that an action on the bonds is

premature. (*Salazar* v. *Steelman*, 4 Cal.App.2d 637, 638 [41 P.2d 571].)

The purpose of section 726 is to prevent a multiplicity of actions and to require a secured creditor to exhaust his security before obtaining a personal judgment against the debtor. (*Toby* v. *Oregon Pac. R. R. Co.*, 98 Cal. 490, 494 [33 P. 550].) The security is made the primary fund for the discharge of the indebtedness (*Bank of Italy etc. Assn.* v. *Bentley*, 217 Cal. 644, 653 [20 P.2d 940]) ; the cause of action on the bonds does not accrue until the security has been exhausted (*Commercial Centre R. Co.* v. *Superior Court*, 7 Cal. 2d 121, 128 [59 P.2d 978, 107 A.L.R. 714]), and appellant cannot waive her right to exhaust the security by suing on the debt prior to foreclosure, without the consent of the mortgagor. (*Barbieri* v. *Ramelli*, 84 Cal. 154 [23 P. 1086] ; *Gnarini* v. *Swiss American Bank*, 162 Cal. 181 [121 P. 726].)

Appellant recognizes that section 726 is a bar to an action on the bonds if that section is applicable to this transaction. She contends, however, that if section 316(b) of the Trust Indenture Act of 1939 does not provide a right of foreclosure (and we have held that it does not), it at least results in a statutory waiver of section 726, and such waiver is expressly made in section 10.19 of the 1945 indenture. That section of the indenture, in compliance with the 1939 statute, provides: "Notwithstanding any other provision of this Indenture, the right of the holder of any Bond to receive payment of the principal of and interest on such Bond, on or after the respective due dates expressed in such Bond, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, . . ."

Appellant argues that the 1939 statute was designed to require security transactions, such as the 1945 indenture, to protect nonconsenting as well as consenting bondholders. Therefore, the protection of section 10.19 extends to both classes, and that section "constitutes a waiver of the effect of C.C.P. 726 by the expression of an inconsistent result. Indeed, in the absence of a right in individual bondholders to foreclose, the provision *must* be construed as authorizing a suit at law in order to effectuate the plain intent of Congress." (App. Reply Br. p. 23.)

Appellant points out that a contractual waiver of section 726 is permissible under section 2953 of the Civil Code which

allows such a waiver when the state corporation department is required to approve the issuance of the mortgage. The bonds here involved were issued under a permit from the state corporation department.

These arguments are unsound. If section 10.19 amounts to a waiver of section 726, it would have to be a waiver by implication, because there is certainly no express waiver. Yet an examination of the 1945 indenture demonstrates that where the parties desired to enter into statutory waivers, they expressly so provided. Thus, there is an express waiver of the statute of limitations, of stay or extension laws, and of other statutory provisions. As a matter of interpretation, these express waivers exclude the likelihood that the parties intended any waivers by implication.

Moreover, the language of section 10.19 indicates that no waiver was intended. It provides that whatever right a bondholder might have to sue for payment "shall not be impaired or affected" by the 1945 indenture. Nonconsenters, because of section 726, had no right to sue on their bonds secured by the original mortgage, and therefore there could be nothing in the 1945 indenture that impairs or affects this nonexistent right. Since section 10.19 does not purport to grant a right to sue before exhausting the security, the prohibition of section 726 still is a bar to an action on the bonds.

Respondents and interveners also contend, with some merit, that the complaint was subject to several grounds of special demurrer, and that, since appellant was given leave to amend and elected not to do so, the judgment entered on the sustaining of the demurrer must be sustained. The disposition we have made of the other points involved makes it unnecessary to consider these points.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 11, 1951, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1951. Carter, J., and Schauer, J., voted for a hearing.