TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

KAMALA D. HARRIS
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-407 |
| of | : | October 13, 1993 |
| DANIEL E. LUNGREN<br>Attorney General | : | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : | |

_____

THE HONORABLE BERNIE RICHTER, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city enforce an annexation agreement executed by the city and a landowner of unincorporated property which requires the landowner, as a condition of receiving city sewer services, to waive his or her right to protest the annexation of the property to the city when such becomes legally permissible, with the waiver binding upon the landowner, future owners, long-term lessees, and other persons residing on the property?

CONCLUSION

A city may enforce an annexation agreement executed by the city and a landowner of unincorporated property which requires the landowner, as a condition of receiving city sewer services, to waive his or her right to protest the annexation of the property to the city when such becomes legally permissible, with the waiver binding upon the landowner, future owners and long-term lessees of the property, but not other persons residing on the property unless they have actual knowledge of the agreement.

1

ANALYSIS

We are informed that a California city has numerous islands of unincorporated territory within its urban area. In supplying sewer services to these unincorporated areas, it has imposed certain conditions upon landowners in exchange for furnishing the services. As to property adjacent to the city, the landowner must file a petition to have the property annexed to the city. The owner of land which is not contiguous, and hence not immediately annexable, must execute and record a "sewer service and annexation agreement" which in part:

> "1. Contains a waiver by the owner of the premises of any right of protest to the annexation of the premises to the incorporated territory of the city provided for under the annexation laws of the state of California,
>
> "2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "3. Provides that the agreement and any waiver, covenants and conditions set forth therein run with the land on which the premises are located; . . . ."

The question presented for resolution is whether the city may enforce these waiver terms against (1) the landowner who has executed the waiver, (2) future owners of the property, (3) long-term lessees of the property, and (4) other persons residing on the property. We conclude generally that the waiver terms may be enforced by the city.

Preliminarily we note that there is no duty on the part of a city to provide sewer services to properties located outside of its boundaries. In fact, a city is not always required to provide sewer services within its boundaries. (*Richards v. City of Tustin* (1964) 225 Cal.App.2d 97.)

As for the annexation of territory to a city, the governing statutory scheme is the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, §§ 56000-57550; "Act").[1] The Act allows landowners and registered voters in "inhabited territory" (12 or more registered voters) to file written protests against a proposed annexation. (§ 57051.) Depending upon the number of protests received, the annexation proceedings may be terminated, an election held, or completed without an election. (§§ 57075, 57078.) Does the application of these state laws prevent a city from requiring a waiver of annexation protest rights as a condition of furnishing sewer services?

---

[1] All references hereafter to the Government Code are by section number only.

In *Ferrini v. City of San Luis Obispo* (1983) 150 Cal.App.3d 239, 246-247, the court stated:

"The annexation of territory by a city has long been held to be both a legislative matter and one of statewide concern. [Citations.] Consequently, matters relating to the annexation of territory to a municipality are not municipal affairs. [Citations.]

"Therefore, the municipal charter may not contain provisions pertaining to annexation which are contrary to the general laws of statewide application. `The annexation of territory to a city is governed by the general laws of the state and is not a municipal affair [citation], and where a city council proceeds under legislative requirements relating to annexation, such requirements constitute the measure of power to be exercised. [Citations.] . . . .

"The intention of the state Legislature to occupy the field in annexation procedures is evidenced by its declaration that MORGA shall provide the exclusive method for changes of organization (§ 35002) which include annexations (§ 35027). `[W]here the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, local government may not legislate in that field. . . .'"[2]

Under *Ferrini*, then, it could be argued that a city may not by ordinance, contract, or otherwise, require annexation protest waivers from landowners or voters.

In *Morrison Homes Corp. v. City of Pleasanton* (1976) 58 Cal.App.3d 724, however, the Court of Appeal upheld an agreement by a developer to have his property annexed to a city when legally permissible in exchange for connecting the property to the city's sewer system. The court rejected the argument that the agreement would violate the annexation statutes, stating as follows:

"The annexation process involves a legislative function of municipal government, in that a city engaging in it exercises a legislative power

---

[2] "MORGA," the Municipal Organization Act of 1977, was replaced by the Act; the latter has a similar provision: "this division provides the sole and exclusive authority for the initiation, conduct, and completion of changes of organization and reorganization for cities and districts" (§ 56100).

3

expressly delegated to it by the state [citation] in pertinent statutes. . . . Its establishment and operation of a municipal sewer system is a `governmental function' [citation] which it may perform under constitutional and statutory authority alike, . . . [citations].  The cited sources of a city's authority to discharge the annexation or sewage functions do not expressly vest it with the authority to contract for either purpose, but they have this effect by necessary implication:  `[A] city has authority to enter into contracts which enable it to carry out its necessary functions, and this applies to powers expressly conferred upon a municipality and to powers implied by necessity.  [Citation.]' (*Carruth v. City of Madera* (1965) 233 Cal.App.2d 688, 695 [annexation contract].  See *McBean v. City of Fresno* (1896) 112 Cal. 159, 161-163, 170 [sewage disposal contract].)" (*Id.*, at pp. 733-734; fn. omitted.)

In *Carruth v. City of Madera* (1965) 233 Cal.App.2d 688, 695, relied upon in *Morrison*, the court sanctioned an annexation agreement which involved the provision of sewer services by a city to a proposed subdivision.

While an annexation agreement executed by a landowner in exchange for sewer services would thus not conflict with the provisions of the Act, does this mean that a right to protest an annexation proposal may always be waived by a landowner?  Section 3513 of the Civil Code provides:

"Anyone may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."

The general operation of Civil Code section 3513 was summarized in *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41, as follows:

"Unless otherwise provided by law, any person may waive the advantage of a law intended for his benefit. (Civ. Code, § 3513.)  Waiver is the voluntary relinquishment of a known right.  [Citation.]  To constitute a waiver, it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.  The doctrine of waiver is generally applicable to all the rights and privileges to which a person is legally entitled, including those conferred by statute unless otherwise prohibited by specific statutory provisions. [Citations.]  . . . ."

4

On the other hand, as the court noted in *Covino v. Governing Board* (1977) 76 Cal.App.3d 314, 322, in holding that a teacher could not waive his status as a probationary teacher in order to be employed as a temporary, full-time teacher:

> "Appellant's claim that despite the provisions of the code he should be permitted to waive his right to the probationary status may not be accepted for two major reasons. One, while as a general rule anyone may waive the advantage of law intended solely for his benefit, a law established for a public reason cannot be waived or circumvented by a private act or agreement (Civ. Code, § 3513; [citations].) Teachers are public employees and their tenure rights elaborately regulated by the Education Code reflect the public policy of the state. As stated in *De Haviland v. Warner Bros. Pictures* (1944) 67 Cal.App.2d 225, 235: `Legislation which is enacted with the object or promoting the welfare of large classes of workers whose personal services constitute their means of livelihood and which is calculated to confer direct or indirect benefits upon the people as a whole must be presumed to have been enacted for a public reason and as an expression of public policy in the field to which the legislation relates.' . . . ."

Consequently, a statutory right may be relinquished if there is knowledge of the right, the waiver is intentional, and the right is intended solely for that individual's benefit and is not intended for a public purpose.

A landowner signing the protest waiver in question would clearly have "knowledge" of the right, but would the right be intended solely for his or her benefit? We believe that it would. In *Northridge Park Water District v. McDonell* (1958) 159 Cal.App.2d 556, the question was whether a water district could adjourn a hearing required by law based upon the landowners' waivers of the statutory requirements. The court concluded:

> ". . . No such adjournment was ordered, probably because each petition contained an express consent that the lands be included in Improvement District Number 1 and express waiver of the code requirement of adjournment. Section 32472 of the Water Code provides that if, during adjournment, protests are filed to inclusion, under the prescribed conditions, by a majority in number of the holders of title to the land proposed to be included, representing a majority in acreage of said land, the board shall dismiss the petition; otherwise the land shall be included subject to the conditions. It is apparent that the adjournment provision is to enable petitioners for inclusion to object to the proposed

5

conditions and for no other purpose. This statutory provision being for their benefit, they may waive it, as they did. . . ." (*Id.*, at p. 562.)

Similarly, in *Allen v. Hance* (1911) 161 Cal. 189, the court held that a landowner could waive his right to contest the validity of a street improvement proceeding. Pursuant to Civil Code section 3513, therefore, we conclude that a landowner may waive his or her right to protest a future annexation of the property by a city furnishing sewer services to the property.

As for any future owners of the property and long-term lessees, section 1589 of the Civil Code provides:

> "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

Here, the subsequent purchasers and long-term lessees would clearly "accept" the benefits of the original agreement, i.e., the sewer services, but would they know or ought to know of the agreement? We believe that the answer may be found in the recording laws (Civ. Code, §§ 1169-1220), which would give them constructive knowledge of the prior landowner's waiver. The recording of a conveyance of real property provides constructive notice of its contents to subsequent purchasers, among others. Civil Code section 1213 provides:

> "Every conveyance of real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees . . . ."

A "conveyance" of real property is defined in Civil Code section 1215 as follows:

> "The term 'conveyance' as used in Sections 1213 and 1214, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or incumbered, or by which the title to any real property may be affected, except wills."

In *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1020, the court explained:

> "The principle is well settled that once an instrument that affects real property is recorded, all persons who later acquire any interest in the

6

property are conclusively presumed to have constructive notice of the contents of the recorded document. (Civ. Code, §§ 1213-1215, 2934, 2952; *Dexter v. Pierson* (1931) 214 Cal. 247 . . . .”

The recording laws apply equally to long-term lessees as they do to subsequent purchasers. (See Civ. Code, §§ 1214-1215; *Commercial Bank v. Pritchard* (1899) 126 Cal. 600, 603; *Garber v. Gianella* (1893) 98 Cal. 527, 529; *Dean v. Brower* (1931) 119 Cal.App. 412, 415.)

In an analogous case, *Citizens Suburban Co. v. Rosemont Dev. Co.* (1966) 244 Cal.App.2d 666, the court applied section 1589 of the Civil Code to “successors” of a contract under which a water company agreed to supply water to a development. While “privity of contract” was found to be lacking, the court held that the successors were subject to the burdens of the original contract under “privity by estoppel.” The court concluded:

> “A fitting criterion of privity is supplied by a concept appearing elsewhere in this case. The concept is that expressed in Civil Code section 1589, *supra*. Applied to the facts, it would be expressed as follows: Voluntary and knowing acceptance of contract benefits among the successive subdividers created a chain of privity without regard to express assignments or formal assumptions of contract burdens. At the time of the December 1956 water service agreement the ostensible contracting party (Rosemont Development Co., the limited partnership) had already left the scene. Immediate beneficiary of Price’s nondisclosure was Wunderlich, the new operator of the Rosemont development. The evidence is not clear whether Wunderlich was the active developer in December 1956 or whether he had already turned the operation over to Price and to his son-in-law, Reynolds. Either before December or within a few months thereafter, the Price & Reynolds partnership became the active developer. For several years following, the partnership used the water service agreement as an important instrumentality in the continued expansion of the Rosemont development. When the two partners incorporated, the corporation continued to receive the benefits of the Citizens Suburban water supply in the developed units of the subdivision. Price, a pervading figure in all these entrepreneurships, was perfectly aware of the methods he had used to lure Citizens Suburban into its commitments. Knowing acceptance of the contract benefits by each of the successive developers creates privity which estops the present developers from asserting that they are not `successors’ of the original contracting party.” (*Id.* at p. 681.)

7

In *Haas v. Palace Hotel Co. of S.F.* (1950) 101 Cal.App.2d 108, 117, the court stated: "While a person may accept the benefits of a contract made for his benefit, such acceptance implies an acceptance of the burdens necessarily connected with the contract."

Accordingly, we conclude that subsequent purchasers and long-term lessees of the property would be subject to the burdens of the original agreement, that is, waiver of the right to protest any annexation proposal. Pursuant to section 1589 of the Civil Code, a privity of contract by estoppel would arise.[3]

Unlike subsequent owners and long-term lessees, "renters" (persons with leases of less than a year, usually month to month tenants) would not have constructive notice of the original owner's agreement under the terms of Civil Code sections 1214 and 1589. Accordingly, if renters are to be found subject to a landowner's waiver, actual knowledge of the agreement would be required. If they do have such knowledge,[4] they would, by the acceptance of the benefits of the sewer services and privity of contract by estoppel, be subject to the original waiver. (*Citizens Suburban Co. v. Rosemont Dev. Co., supra,* 244 Cal.App.2d 666; *Haas v. Palace Hotel Co. of S.F.*, *supra,* 101 Cal.App.2d 108.)

In answer to the question presented, therefore, we conclude that a city may enforce an annexation agreement executed by the city and a landowner of unincorporated property which requires the landowner to waive his or her right to protest annexation of the property to the city when such becomes legally permissible, with the waiver binding upon the landowner, future landowners and long-term lessees of the property, but not other persons residing on the property unless they have actual knowledge of the agreement.

*****

---

[3] Due to our analysis of Civil Code section 1589 and the conclusion that we reach, we need not determine the effect of the "run with the land" requirement of the particular waiver agreement in question.

[4] For example, the terms of the waiver could be placed in the rental agreements.